PATRICIA H. LYON (State Bar Number 126761)
FRENCH & LYON
Attorneys At Law
a Professional Corporation
22 Battery Street, Suite 404
San Francisco, CA 94111
Telephone: 415-597-7849
Facsimile: 415-243-8200
phlyon@aol.com
Attorneys for Richard Schwalbe,
Chapter 7 Trustee, Lohrey Enterprises, Inc.

JEREMY W. KATZ (State Bar Number 119418)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 394-5700
Facsimile: (415) 394-5003
Email: jkatz@pinnaclelawgroup.com
Attorneys for Jeffrey E. Hutchinson,
Chapter 7 Trustee, Lohrey Investments, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(SANTA ROSA DIVISION)

| | |
|---|---|
| In re:<br><br>LOHREY INVESTMENTS, LLC,<br><br>             Debtor. | Case No.: 09-10007 AJ 7<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS AND APPROVING AGREEMENT RE CONSENT TO SALE OF PROPERTY AND DISTRIBUTION OF PROCEEDS**<br><br>**Hearing**<br>Date:   January 22, 2010<br>Time:  10:00 a.m.<br>Place:  Hon. Alan Jaroslovsky<br>          99 South "E"<br>          Santa Rosa, CA |

-1-
MEMORANDUM IN SUPPORT OF MOTION TO SELL PROPERTY OF THE
ESTATE FREE AND CLEAR, ETC.
CASE NO. 09-10007-AJ

Richard Schwalbe, Chapter 7 Trustee (hereinafter "Schwalbe" or "Trustee") of the Bankruptcy Estate of Lohrey Enterprises, Inc., (hereinafter the "WCL Estate"), dba West Coast Lien (hereinafter "WCL"), case no. 08-12206 AJ-7, and Jeffrey E. Hutchinson ("Hutchinson"), Chapter 7 Trustee of the Chapter 7 Bankruptcy Estate (the "Investments Estate") of Lohrey Investments, LLC ("Investments"), submit the following memorandum in support of motion to sell certain assets of the Estates free and clear of the liens of secured creditors, and for an order approving the terms of a Consent to Sale of Property and Distribution of Proceeds Agreement ("Consent Agreement") entered into among Schwalbe, Hutchinson, and certain of the secured creditors. Schwalbe and Hutchinson will be collectively referred to from time to time as the "Trustees."

## I. FACTUAL BACKGROUND.

WCL formerly operated a commercial laundry on real property owned by Investments located at 8190 Murray Avenue, Gilroy, California (hereafter, the "Real Property"). The Investments Estate owns the Real Property, including all improvements and fixtures located thereon, and all easements, licenses, right of way, permits and all appurtenances thereto. WCL owns the equipment used to operate the commercial laundry (hereafter, the "Equipment"), which Equipment is more particularly described in Exhibit "A" to the Declaration of Richard Schwalbe filed in the WCL case (hereafter, "Schwalbe Decl."), as well as the water and sewer rights necessary for the operation of the laundry business (the "Water Rights"). The Real Property, the Equipment, and the Water Rights shall be referred to collectively herein as the "Sale Assets."

WCL filed its voluntary Chapter 11 Petition (hereinafter the "Lohrey Bankruptcy Case") on October 17, 2008. Schwalbe was appointed Chapter 11 Trustee of the WCL Case on November 7, 2008. On November 21, 2008, the WCL Case was converted to a case under Chapter 7 of the Bankruptcy Code and Schwalbe was appointed Chapter 7 Trustee. See Schwalbe Decl., ¶ 2.

On January 5, 2009, Investments filed a voluntary Chapter 11 Petition (hereinafter the "Investments Case"). Schwalbe Decl., ¶ 4. Hutchinson was appointed Chapter 11 Trustee on

October 20, 2009. The Investments case was also converted to a Chapter 7 case and Hutchinson was duly appointed as Chapter 7 Trustee. Schwalbe Decl., ¶ 4.

On or about January 7, 2009, Vestin and Owens filed an Adversary Proceeding, Case No. 09-01001 in the Northern District of California Bankruptcy Court against Schwalbe and Podium Financial Group ("Podium") in the Enterprises Case, claiming a security interest in the Equipment. Schwalbe has settled the dispute with Owens and Vestin and has stated on the record of the Court in the Adversary Proceeding that Schwalbe stipulates that, for purposes of determining the extent and nature of the liens, the claim of Owens and Vestin is a secured claim and that the security includes the Equipment. Schwalbe Decl., ¶ 5.

On January 26, 2009, the MCI Computer Leasing, Inc. (hereinafter "MCI") obtained relief from stay in the Enterprises Case to proceed against specified equipment located at the Real Property (hereinafter the "MCI Equipment"). The MCI Equipment is **not** included in the sale that is the subject of this motion. Schwalbe Decl., ¶ 6.

The drastic downturn in the receipts from the operations of the commercial laundry and the monthly expense for security and utilities at the Real Property have made it necessary for the Trustees to sell the Sale Assets. Security services currently cost approximately $11,300 per week, and a total of $340,719.38 has been paid by the WCL Estate through November 11, 2009. Power costs through PG&E have totaled $34,368.78 through September 2009, and water has totaled $4,286.63 through September 2009. The value of the Sale Assets is declining. The roofs of all three buildings leak badly and there are no funds for repairs. Further damage is expected with each rainy day. The roof of one of the buildings collapsed prior to the bankruptcy and has been condemned by the local authorities. The Equipment could also be damaged from rain water leaking through the roof in the near future. Schwalbe Decl., ¶ 7.

Since he was first appointed Chapter 11 Trustee, Schwalbe has spent many hours working toward a sale of the Real Property and the Equipment as a combined asset sale. Unless the Equipment used in the laundry business is sold together with the Real Property, the Estates will not realize the true value of such assets. Schwalbe Decl., ¶ 8.

-3-
MEMORANDUM IN SUPPORT OF MOTION TO SELL PROPERTY OF THE
ESTATE FREE AND CLEAR, ETC.
CASE NO. 09-10007-AJ

Angelica Textile Services, Inc. (hereinafter "Angelica") has offered to pay Four Million One Hundred Thousand Dollars ($4,100,000) for the Sale Assets pursuant to a written Purchase and Sale Agreement (the "Sale Agreement"). The original offer made by Angelica was $4,850,000; however, after conducting due diligence and inspections, Angelica reduced the price to $4,100,000. Schwalbe, Hutchinson, and Angelica have all signed the Sale Agreement. Schwalbe Decl., ¶ 9 and Exhibit "B" thereto; Hutchinson Decl., ¶ 4.

Under the terms of the Sale Agreement, the purchase price is to be paid in cash and is contingent upon terms and conditions as set forth in the Sale Agreement. Schwalbe Decl., ¶ 10 and Exhibit "B" thereto. In the Trustees' opinion, based on analysis and investigation, Angelica's offer is the highest and best offer for the Sale Assets. Schwalbe Decl., ¶ 10; Hutchinson Decl, ¶ 3. Angelica has committed financing which will expire in the near future if a sale is not closed. The Sale Assets have been marketed widely and many potential buyers declined to make offers for the business because of the deteriorating condition of the real estate. Schwalbe Decl., ¶ 10.

In order to maximize the value of the Sale Assets to the Estates, the Trustees seek to sell the Sale Assets free and clear of liens. Schwalbe Decl., ¶ 12; Hutchinson Decl, ¶ 4.

If the Sale Assets are not sold to Angelica pursuant to the terms of the Sale Agreement, it is highly likely that the Equipment will have to be sold piece-meal at a seriously reduced price. The Real Property is single purpose, having been designed as a commercial laundry. The Real Property has substantially less value if sold without the laundry equipment and water and sewer rights to more than 150,000 gallons per day. The Equipment would have substantially less value if sold separately from the Real Property because it is costly to move. Furthermore, some of the Equipment was designed to be operated in a particular manner such as loading and/or unloading linen from the right, left or center that would need to be redesigned and partly rebuilt to operate at a different location. Schwalbe Decl., ¶ 11.

///

///

## II. LEGAL ANALYSIS.

### A. The Sale Satisfies the Business Judgment Test.

The Bankruptcy Code requires court approval for the use, sale, or lease of a debtor's assets outside of the ordinary course of business. 11 U.S.C. § 363(b). Most courts also require a "business justification" for the transaction. *Stephens Industries, Inc. v. McCluna,* 789 F.2d 386 (6th Cir. 1986) (section 363 sale of all estate assets proper when dictated by sound business purpose).

The Trustees believe that they have exhibited sound business judgment in seeking to sell the Sale Assets. The monthly expense of the security and utilities at the Real Property has made it necessary for the Trustees to sell the Sale Assets. Security services currently cost approximately $11,300 per week, and a total of $340,719.38 has been paid by the WCL Estate through September 2009. Power costs through PG&E have totaled $34,368.78 through September 2009, and water has totaled $4,286.63 through September 2009. The value of the Sale Assets is declining rapidly. The roofs of all three buildings leak badly and there are no funds for repairs. Further damage is expected with each rainy day. The roof of one of the buildings collapsed prior to the bankruptcy and has been condemned by the local authorities. The Equipment could also be damaged from rain water leaking through the roof in the near future.

After evaluating the options available to the Trustees, the Trustees have concluded that an orderly disposition of the Sale Assets would generate the highest return to its creditors. The business has been marketed widely and many potential buyers declined to make offers for the business because of the deteriorating condition of the Real Property. Schwalbe has conducted diligent sales efforts. The Trustees are confident that the proposed sale amount is the highest and best offer that the Trustees will be able to obtain for the Sale Assets.

A trustee shows good business judgment where it decides, in good faith, that assumption of contracts and sale of assets benefits the estate and its unsecured creditors. *In re FCX. Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.C. 1986).

## B. The Court Should Authorize the Sale Free and Clear of Liens, Claims, and Other Interests.

Section 363(f) of the Bankruptcy Code permits a debtor or trustee to sell assets free and clear of interests of an entity under the following circumstances:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Vestin, Owens, and Podium have all consented to the sale. Thus, the Court may authorize the sale free and clear of their asserted liens pursuant to 11 U.S.C. § 363(f)(2).

The only other lien of record against the Real Property is that of IFC Credit Corporation. The lien is in bona fide dispute. According to a preliminary title report, IFC Credit is the beneficiary under a deed of trust recorded on May 28, 2004. The deed of trust was then subordinated to a deed of trust in favor of the Owens Trust. In any event, the Trustees are informed that the obligation secured by IFC Credit's deed of trust has been paid in full. Therefore, the IFC Credit lien is in bona fide dispute and the Trustees may sell the Sale Assets free and clear of the IFC Credit lien pursuant to § 363(f)(4).

## C. The Overbid Procedures Are Reasonable.

The sale is subject to overbids. The Court is empowered to establish sales procedures, including incremental overbid requirements. 11 U.S.C. § 105. Courts routinely set minimum overbid requirements. See, e.q., *In re Financial News Network. Inc.*, 931 F.2d 217 (2nd Cir. 1991); *In re Crown Corp.,* 679 F.2d 774 (2nd. Cir. 1982).

-6-
MEMORANDUM IN SUPPORT OF MOTION TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR, ETC.
CASE NO. 09-10007-AJ

Case: 09-10007    Doc# 70-3    Filed: 12/22/09    Entered: 12/22/09 12:42:19    Page 6 of 8

Pursuant to the terms of the Sale Agreement, the Trustees submit that the overbid procedures outlined in the Motion are fair and reasonable under the circumstances and should be approved. The minimum bidding requirement of $100,000 increments is reasonable to ensure that the Trustees receive the maximum price for the Sale Assets while being fair to Angelica who has agreed to be the stalking horse and has already made a $100,000 deposit toward the purchase price.

### D. The Court Should Authorize Trustee To Enter Into The Consent Agreement.

The Consent Agreement is essentially a de facto section 506(c) stipulation to reimburse the WCL Estate and the Investments Estate for expenses associated with preserving and disposing of the Sale Assets. Pursuant to 11 U.S.C. § 506(c), a trustee may charge a secured creditor's collateral or claim for expenses associated with protecting that creditor's collateral. The Trustees may surcharge the collateral if three conditions are met: (i) the expenses were "necessary" to preserve the collateral, (ii) they were "reasonable," and (iii) the expenses provided a "benefit" to the secured creditor. *See, e.g., Bank of Honolulu v. Anderson* (*In re Anderson*), 66 B.R. 97, 99 (B.A.P. 9th Cir. 1986); *In re Trenge,* 127 B.R. 552, 556-557 (E.D. Pa. 1991).

The security services and other measures taken by Schwalbe and Hutchinson to preserve the Sale Assets were not only reasonable, but essential. Absent such measures, the Sale Assets would have been subject to vandalism, theft and destruction. Schwalbe Decl., ¶ 15; Hutchinson Decl., ¶ 5. The secured creditors have agreed to the "carve-out" and the Consent Agreement sets forth the secured creditors' recognition of the value of such measures, without which the sale would not have been possible.

Although the WCL estate is not the owner of the Real Property, Hutchinson, as Trustee of the Investments Estate, has recognized that Trustee's services on behalf of both Estates were valuable and that the WCL Estate should be reimbursed for the costs and expenses associated with such services.

///

### III. CONCLUSION.

WHEREFORE, the Trustees pray for an order (1) authorizing the sale to Angelica or to the successful overbidder free and clear of the liens of the Lienholders, with the Liens, if any, attaching to the proceeds of sale, (2) authorizing the Trustees to execute such documents and take such action necessary to consummate the sale of the Sale Assets to Angelica or the successful overbidder, (3) authorizing the Trustees to enter into the Consent Agreement and to distribute the proceeds of sale as set forth in said Consent Agreement, and (4) for such other and further relief that the Court deems appropriate.

Dated: December 22, 2009

FRENCH & LYON
A Professional Corporation

By: /s/ Patricia H. Lyon
    Patricia H. Lyon
    Attorney for Richard Schwalbe
    Chapter 7 Trustee

Dated: December 22, 2009

PINNACLE LAW GROUP LLP

By: Jeremy W. Katz
    Jeremy W. Katz
    Attorneys for Jeffrey E. Hutchinson,
    Chapter 7 Trustee,
    Lohrey Investments, LLC