

1  REIDUN STRØMSHEIM # 104938
   STROMSHEIM & ASSOCIATES

**Signed: March 16, 2010**

2  201 California Street, Suite 350
   San Francisco, California 94111
3  Telephone:     (415) 989-4100
   Fax:           (415) 989-2235
4  rstromsheim@stromsheim.com
   Attorneys for Trustee,

_____

**ALAN JAROSLOVSKY**
**U.S. Bankruptcy Judge**

5  JEFFRY G. LOCKE

_____

6
7  Jeremy W. Katz #119418
   Pinnacle Law Group LLP
8  425 California Street, Suite 1800
   San Francisco, CA 94104
   Telephone:  (415) 394-5700
9  Facsimile:  (415) 394-5003
   jkatz@pinnaclelawgroup.com
10 Attorneys for Jeffrey E. Hutchinson,
   Chapter 7 Trustee, Lohrey Investments, LLC

11

12

13                  UNITED STATES BANKRUPTCY COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16  In re:                                    Case No. 09-10007

    LOHREY INVESTMENTS, INC.                  Chapter 7

18

19  TAX ID# 94-3308782

20          Debtor

21  <u>**ORDER AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF CERTAIN**</u>
    <u>**LIENS AND APPROVING AGREEMENT RE CONSENT TO SALE OF PROPERTY**</u>
22  <u>**AND DISTRIBUTION OF PROCEEDS**</u>

23          A hearing on the joint motion (the "Joint Motion") of the former Trustee of the

24  Chapter 7 Estate of Lohrey Enterprises, Inc., dba West Coast Linen, Case No. 08-12206 (the

25  "WCL Estate"), and the Trustee of the Chapter 7 Estate of Lohrey Investments, LLC, (hereafter

26  the "Investments Trustee", "Investments Estate" and collectively with the WCL Estate, the

27  "Estates") to sell assets free and clear of certain liens and approving (i) the Purchase and Sale

28  Agreement dated as of November 24, 2009 (the "Sale Agreement," a copy of which is attached

hereto as Exhibit "A")[1], between the former Trustees of the Enterprises Estate and the Trustee of the Investments Estate, on the one hand, and Angelica (defined below), on the other hand, and (ii) the proposed agreement re Consent to Sale of Property and Distribution of Proceeds between the Trustees of the Estates, Owens, Vestin and Podium (all as defined below) (the "Consent Agreement," a copy of which is attached as Exhibit C to the Schwalbe Declaration), was held before this Court on January 22, 2010 at 10:00 a.m.; appearances were as noted on the record.

Having considered the Joint Motion and all related pleadings, any opposition thereto, and the arguments of counsel, and having subsequently considered the Notice of Erratum attached hereto as Exhibit "B", and the former Trustee having been removed on February 5, 2010, and Jeffry Locke having been appointed successor Trustee on February 5, 2010 ("Successor Trustee"),

THE COURT FINDS THAT:

    A.    Notice of the Joint Motion was proper and adequate.

    B.    Angelica Textile Services, Inc. ("Angelica" or "Buyer") has acted in good faith and is entitled to the protections of Section 363(m) of the Bankruptcy Code.

Based on the foregoing and the findings and conclusions stated orally in the record, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

    1.    The notice of the Joint Motion and the hearing thereon is approved as proper and adequate under the circumstances.

    2.    The Joint Motion is granted and the sale to Buyer is approved as the highest and best offer.

    3.    The Successor Trustee and the Investments Trustee are authorized to sell the Real Property, the Water Rights and the Equipment described in the Joint Motion (collectively, the "Sale Assets") to Buyer for the purchase price of $4,100,000 and in accordance with the terms and conditions that are set forth in the Sale Agreement and this Order. A legal description of the subject Real Property, with a street address of 8190 Murray Avenue, Gilroy, California, situated in

---

[1]    A draft version of the Sale Agreement dated 11/20/09 was inadvertently submitted in support of the Motion. The correct agreement dated 11/24/09, which incorporates a due dilligence period, is attached hereto.

Santa Clara County, California, is attached hereto as Exhibit "B".

4.      The Consent Agreement is approved, and the Net Proceeds are to be disbursed to the Successor Trustee of the WCL Estate to hold pending further court order.

Pursuant to Section 363(f) of the Bankruptcy Code, effective upon closing, the sale of the Sale Assets will vest in Angelica all right, title and interest of the Estates, Lohrey Enterprises, Inc., and Lohrey Investments, LLC, in the Sale Assets, free and clear of the liens, claims or interests of Podium, Vestin, Owens, Lohrey Acquisition Fund, LLC, MCI Computer Leasing, Inc., IFC Credit Corporation, and (to the extent not paid out of escrow at closing) the County of Santa Clara Tax Collector (collectively, the "Affected Interests").

5.      Unless the holders of the Affected Interests have agreed to other treatment, their liens, claims or interests shall attach to the proceeds of the sale with the same force, effect, validity and priority that previously existed against the Sale Assets.

6.      The Order shall be effective as a determination that, upon and subject to the occurrence of the closing of the sale, all Affected Interests have been and are adjudged and declared to be unconditionally released as to the Sale Assets.

7.      Buyer has not assumed any liabilities of the Debtor.

8.      The former Trustee was, and the Successor Trustee and the Investments Trustees are, authorized to execute and perform the Sale Agreement and the Consent Agreement to effectuate or consummate the sale, and to undertake such other actions as may be reasonably necessary or appropriate to complete the sale.

9.      Except as otherwise provided in the Motion or the Sale Agreement, the Sale Assets shall be sold, transferred, and delivered to Buyer on an "as is, where is" and "with all faults" basis.

10.     Angelica is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and Angelica is entitled to all protections of Section 363(m) of the Bankruptcy Code.

11.     The Order is effective immediately upon entry.  No automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, or Bankruptcy Rules 6004(h) or 6006(d), shall apply with respect to the Order.

STROMSHEIM & ASSOCIATES

3

12.      The Court shall retain jurisdiction to enforce and implement the terms and provisions of the Order and the Sale Agreement, all amendments thereto, any waivers and consents thereunder, and each of the documents executed in connection therewith in all respects, including retaining jurisdiction to (a) compel delivery of the Sale Assets to Angelica, (b) resolve any disputes arising under or related to the Sale Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Sale Assets; and,

13.      The Sale Agreement and any related documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' bankruptcy estates.

**END OF ORDER**

# EXHIBIT A

## PURCHASE AND SALE AGREEMENT

by and between

### RICHARD SCHWALBE, as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Enterprises, Inc., d/b/a West Coast Linen; and

### JEFFREY E. HUTCHINSON, as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Investments, LLC, Debtor

as "Sellers"

and

### ANGELICA TEXTILE SERVICES, INC.,

as "Buyer"

Dated as of November 24, 2009

DB04/521409.0028/2131939.2 MD31

# PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "*Agreement*"), dated as of November 24, 2009, is hereby entered into by and between Angelica Textile Services, Inc. ("*Buyer*"), and Richard Schwalbe ("*Schwalbe*"), as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Enterprises, Inc., d/b/a West Coast Linen ("*WCL*"), and Jeffrey E. Hutchinson ("Hutchinson"), as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Investments, LLC, Debtor ("*Investments*"), (Schwalbe and Hutchinson are collectively referred to herein as "*Sellers*").

## RECITALS:

A.   WCL formerly operated a commercial laundry on real property and improvements owned by Investments, located in Gilroy, California, with a street address of 8190 Murray Avenue, City of Gilroy, County of Santa Clara, State of California, more particularly described on Exhibit A, hereto. The real property, including all improvements and fixtures located thereon, and all easements, licenses, rights of way, permits and all appurtenances thereto, is hereafter referred to as the "*Real Property*."

B.   On October 17, 2008 ("*WCL Petition Date*"), Lohrey Enterprises filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Northern District of California (the "*Bankruptcy Court*"), case no. 08-12066 AJ (the "*WCL Bankruptcy Case*").

C.   On November 7, 2008, Schwalbe was appointed Chapter 11 Trustee in the WCL Bankruptcy Case. On November 21, 2008, the WCL Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, with Schwalbe as the Chapter 7 Trustee (Schwalbe in his capacity as Chapter 7 Trustee is referred to hereinafter as the "*WCL Trustee*").

D.   On January 5, 2009 ("*Investments Petition Date*"), Investments filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court, case no. 09-10007 (the "*Investments Bankruptcy Case*"). On or about October 19, 2009, Hutchinson was appointed Chapter 11 Trustee. On November 13, 2009, the Investments Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, and Hutchinson has been appointed Chapter 7 Trustee (Hutchinson in his capacity as Chapter 7 Trustee is referred to herein as the "*Investments Trustee*").

E.   On January 7, 2009, Vestin Mortgage, Inc., and Owen Trust (together "*Plaintiffs*") filed Adversary Proceeding no. 09-01001 in the Bankruptcy Court against the WCL Trustee, et al., with respect to Plaintiffs' claimed interest in certain equipment used in WCL's operations at the Real Property (the "*Vestin Adversary*").

F.   On January 26, 2009, the Bankruptcy Court entered an order lifting the automatic stay and authorizing MCI Computer Financing, Inc. ("*MCI*") to proceed against specified equipment located at the Real Property (the "*MCI Equipment*"). A copy of the stay relief order describing the MCI Equipment is attached hereto as Exhibit B. Sellers make no claim to the MCI Equipment.

G.     The Investments Trustee asserts that the Investments Bankruptcy Estate is the owner of the Real Property.

H.     With the exception of the MCI Equipment, the WCL Trustee asserts that the WCL Bankruptcy Estate is the owner of all of the machinery, equipment, , furniture and other personalty located at the Real Property or otherwise used in the conduct of the WCL laundry operations, including but not limited to the property listed on Exhibit C hereto (the "*Personal Property*").

I.     Sellers desire to sell, and Buyer desires to buy, the improved Real Property and the Personal Property.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing and the mutual covenants and promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS

1.1     **Defined Terms**.  As used herein, unless the context requires otherwise, terms defined in the body of this Agreement shall have the meaning so defined.  In addition, the terms below shall have the following meanings:

(a)     "*Assets*" shall mean (i) the Personal Property and (ii) the Real Property.

(b)     "*Dollars*" shall refer to currency of the United States of America.

(c)     "*Final Order*" shall mean an order of the Bankruptcy Court, or other court of competent jurisdiction, that is final for purposes of appeal, as to which the time for appeal, including any extensions, has expired, and from which no appeal has been taken;

(d)     "*Sale Order*" shall mean an order of the Bankruptcy Court pursuant to 11 U.S.C. §363 approving this Agreement and the sale contemplated hereby free and clear of any lien, claim or encumbrance, containing a finding of good faith pursuant to 363(m), reasonably satisfactory in form and substance to Buyer, Sellers and their respective counsel, entered after a hearing conducted with adequate notice given relating to the sale of the Assets.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 8 of 74

## ARTICLE II

## PURCHASE AND SALE AGREEMENT

2.1 **Transfer of Assets**. Upon the terms and subject to the conditions and provisions contained herein, at the Closing (defined below), Sellers shall sell, convey, transfer, assign and deliver to Buyer or Buyer's assignee, and Buyer or Buyer's assignee shall acquire and accept from Sellers, all of the Sellers' right, title, and interest in, to, and under the Assets free and clear of all liens, claims and encumbrances.

2.2 **Excluded Assets**. The sale does not include any books and records located on the Real Property required by law to be retained by the Trustees, including, but not limited to, confidential employee information.

2.3 **No Assumption of Liabilities**. Buyer shall not assume, or be responsible or liable for, any of the Sellers' liabilities or obligations existing as of Closing, including but not limited to any claims (as defined in 11 U.S.C. § 101(5)), any past, present or future liabilities or obligations of Sellers arising under loans and other debts, taxes, wages, unpaid commissions, bonuses, brokers' fees, profit and pension plans, employee benefits, health insurance claims, union contracts, federal, state or local environmental laws, or liability, OSHA, FLSA, ERISA, workers' compensation, and other federal, state and local laws, product warranty and liability claims, unfair labor practices, employee claims, discrimination claims, errors and omissions, litigation, violations of law and tort claims or actions, whether disclosed or undisclosed, which have accrued or arise out of Sellers' omissions or conduct of their business on or prior to the Closing.

2.4 **Purchase Price**. For the sale, transfer, assignment, conveyance and delivery of the Assets and upon the terms and subject to the conditions set forth herein, Buyer shall pay to Sellers the sum of Four Million One Hundred Thousand Dollars ($4,100,000.00) (the "*Purchase Price*") in the following manner: (i) within three (3) business days following the date of full execution of this Agreement, a fully refundable earnest money deposit (the "*Earnest Money Deposit*") in the sum of One Hundred Thousand Dollars ($100,000.00) cash, to be delivered to Schwalbe, segregated and held in a separate Debtor-in-Possession account in the Bankruptcy Estate of WCL. The Earnest Money Deposit shall be subject to and governed by the terms set out on the Earnest Money Deposit Agreement, Exhibit D, hereto; (ii) at the Closing, subject to any prorations set forth in this Agreement, the sum of Four Million Dollars ($4,000,000.00) cash.

2.5 **Bankruptcy Court Approval**. Promptly upon full execution of this Agreement, Sellers shall make application to the Bankruptcy Court pursuant to 11 U.S.C. 363 (the "*Sale Motion*"), in a form reasonably acceptable to Buyer, for the Sale Order approving this Agreement and the sale contemplated hereby free and clear of any lien, claim, or encumbrance. The Sale Motion, or such other additional motion as may be required, shall also request entry of a preliminary order approving the bidding procedures set out in section 9.16, below (the "*Sale Procedures Order*"). Sale of the Assets shall be subject to higher and better bids, as determined by the WCL Trustee and Investments

3

Trustee in the exercise of their reasonable business judgment and approved by the Bankruptcy Court, in accordance with the Sales Procedures Order. The notice of the hearing to consider the Sale Motion (the "***Hearing***"), the Sale Procedures Order and the Sale Motion shall be served on all parties required by the Bankruptcy Code and any other person, party, or entity identified by Buyer (the "***Notice***"). At the Hearing, Sellers shall offer testimony (whether live, documentary, or by proffer) to establish that the transactions proposed herein are fair and equitable, are in the best interests of the creditors and the bankruptcy estates, and that the sale is a valid and proper exercise of the Sellers' business judgment, and such other evidence as Buyer reasonably believes is necessary to obtain approval of the Sale Motion and entry of the Sale Order.

## ARTICLE III

## CLOSING

3.1     **Closing**.  Upon the terms and conditions set forth herein and in the Sale Order, the closing of the transaction contemplated herein (the "***Closing***") shall be held at 10:00 a.m. at  a location mutually agreeable to Buyer and Sellers, on a date mutually agreeable to Buyer and Sellers that is no more than ten (10) business days after the later of (a) the date the Sale Order has become a Final Order, or (b) the date that Buyer acknowledges the satisfaction of the due diligence condition or waives any further due diligence in accordance with section 8.4, below, but not later than January 31, 2010. The date on which the Closing occurs in accordance with the previous sentence is referred to as the "***Closing Date***." If any condition precedent has not been satisfied as of the Closing Date, Buyer may, but is not required to, extend the Closing Date.

3.2     **Conveyances at Closing**.  At the Closing, and in connection with effecting and consummating the Closing, including, without limitation, the sale and purchase of the Assets and the delivery of the Purchase Price, Sellers and Buyer shall, on the Closing Date, deliver (or cause to be delivered) the following:

    (a)     **Instruments and Possession**.  Sellers shall deliver to Buyer:

        (i)     a certified copy of the Sale Order;

        (ii)    one or more bills of sale conveying good, marketable and sufficient title to all of the Personal Property;

        (iii)   one or more deeds conveying good, marketable and sufficient title to the Real Property;

        (iv)    such other documents, including but not limited to notices, consents, assurances, certificates, and such other instruments of conveyance and transfer as Buyer shall reasonably request and as shall be effective or necessary to vest in Buyer good, marketable and sufficient title to all of the Assets; and

        (v)     physical possession of the Assets.

4

DB04/521409.0028/2131939.2 MD31

(b)     **Additional Instruments**.  After the Closing Date, Sellers shall deliver to Buyer such other instruments as shall be reasonably requested by Buyer to vest in Buyer title in and to the Assets in accordance with the provisions hereof.

(c)     **Payment of Purchase Price**.  At the Closing, Buyer shall cause the Purchase Price, less the Earnest Money Deposit previously deposited with Schwalbe, to be paid as provided in the Sale Order.  Buyer's obligation to pay the Purchase Price shall be complete upon making such payment.

3.3     **Transaction Expenses**.  Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

3.4     **Other Closing Matters**.  Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF SELLERS

Sellers represent and warrant to Buyer that the statements contained in this Article IV are correct and complete as of the date of this Agreement, subject to the entry of the Sale Order by the Bankruptcy Court.

4.1     **Authorization of Sellers**.  Schwalbe is the duly appointed and qualified Chapter 7 Trustee of the WCL Bankruptcy Estate, and Hutchinson is the duly appointed and qualified Chapter 7 Trustee of the Investments Bankruptcy Estate.  This Agreement has been duly executed and delivered by Sellers, and upon entry of a final Sale Order, is a valid and binding obligation of Sellers, enforceable against Sellers in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity).  In addition, the terms of the Sales Procedures Order contemplated by sections 2.5 and 9.16 hereof shall be binding on the parties upon entry thereof.

4.2     **Assets**.  Subject to section 4.4 below, Sellers have (or will have as of the Closing pursuant to Sections 363(b) and (f) of the Bankruptcy Code) good and marketable title to the Assets, and will convey such Assets free and clear of all liens, claims and encumbrances. The Assets will be maintained by Sellers until Closing in accordance with normal business and maintenance practices.

4.3     **Liens, Claims, Encumbrances, and Other Interests in the Assets**.  Sellers have made best efforts to identify to Buyer all liens, claims, encumbrances, and other interests in the Assets of which Sellers have notice or actual knowledge; provided, however, that Sellers have no obligation to obtain a title report or certified UCC search.

5

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 11 of 74

4.4 **Disclaimer of other Representations and Warranties**. Except as expressly set forth in this Article IV, Sellers make no representation or warranty, express or implied, at law or in equity, in respect of the Assets, including, without limitation, with respect to merchantability or fitness for any particular purpose, and any such other representations or warranties are hereby expressly disclaimed. Buyer hereby acknowledges and agrees that, except to the extent specifically set forth in this Article IV, Buyer is purchasing the Assets on an "as-is, where-is" basis. Without limiting the generality of the foregoing, Sellers make no representation or warranty regarding any assets other than the Assets, and none shall be implied at law or in equity.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Sellers that the statements contained in this Article V are correct and complete as of the date of this Agreement.

5.1 **Organization of Buyer**. Buyer is duly organized, validly existing and in good standing under the laws of the State of its organization.

5.2 **Authorization**. This Agreement has been duly executed and delivered by Buyer and, subject to the terms and conditions contained herein, is a valid and binding obligation of Buyer, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity).

5.3 **Financial Capacity**. Buyer has sufficient financial resources to consummate the transaction contemplated herein.

5.4 **"AS IS" TRANSACTION**. Buyer acknowledges and agrees that except as expressly set forth in Article IV, Sellers make no representation or warranty, express or implied, at law or in equity, regarding the physical, environmental, or economic condition of the Assets, including, without limitation, with respect to merchantability or fitness for any particular purpose or use, and any such other representations or warranties are hereby expressly disclaimed. Buyer hereby acknowledges and agrees that, except to the extent specifically set forth in Article IV, Buyer is purchasing the Assets on an "as-is, where-is" basis, with all faults. Without limiting the generality of the foregoing, Sellers make no representation or warranty regarding any assets other than the Assets, and none shall be implied at law or in equity.

## ARTICLE VI

## ADDITIONAL COVENANTS

6.1 **Best Efforts to Obtain Consent of Lienholders**. Sellers shall use their best efforts to obtain the consent to the sale contemplated hereby of any party asserting a lien, claim, encumbrance or other interest in the Assets.

DB04/521409.0028/2131939.2 MD31

6.2 **Removal of Third-Party Property from the Real Property**. Prior to Closing, Sellers shall have used their best efforts to have caused the MCI Equipment to be removed from the Real Property, and any other equipment or other personal property which is not to be acquired by Buyer under this Agreement; provided, however, that Buyer may designate any such equipment or other personalty located at the Real Property which may remain at the Real Property pursuant to separate agreements between Buyer and third parties. Sellers shall give Buyer at least five (5) business days' notice prior to removal of any equipment not to be acquired by Buyer, and Buyer shall have the right to be present during any such removal.

6.3 **Inspections**. Sellers agree that from the date hereof through the Closing, Sellers shall allow Buyer and its representatives to make such inspection of the Assets as Buyer deems appropriate, provided that Buyer shall provide 24 hours' notice to Seller of its intent to access the Real Property, and shall access the Real Property during normal business hours, Monday through Saturday. Upon Buyer's request, Sellers shall provide Buyer with all documents, records and information with respect to the Assets in Sellers' custody or control or to which Sellers have access.

## ARTICLE VII

## CONDITIONS TO SELLERS' OBLIGATIONS

The obligations of Sellers to sell the Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer in accordance with Section 9.8:

7.1 **Entry of Sale Order**. The Sale Order shall have been entered by the Bankruptcy Court, and shall not have been stayed by any order of a court with jurisdiction to do so as of the Closing Date.

7.2 **Purchase Price**. The Sellers have received the Purchase Price, in cash.

7.3 **Litigation**. There shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of this transaction contemplated by this Agreement.

7.4 **Covenants and Representations**. Buyer shall have performed in all material respects all agreements and covenants required hereby to be performed by Buyer prior to or at the Closing Date, and the representations and warranties of Buyer made in Article V shall be true and correct in all material respects as of the Closing Date as if made on such date.

DB04/521409.0028/2131939.2 MD31

Case: 09-10007 Doc# 81 Filed: 03/16/10 Entered: 03/16/10 15:43:09 Page 13 of 74

## ARTICLE VIII

## CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer to purchase the Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer in accordance with Section 9.8:

8.1 **Entry of a Sales Procedures Order**. The Court shall have entered a Sales Procedures Order pursuant to sections 2.5 and 9.16 hereof in form and substance satisfactory to Buyer.

8.2 **No Material Adverse Change**. There shall have been no material adverse change in the amount, or in the condition of, the Assets from the date hereof to the Closing (any such change, a "*Material Adverse Change*").

8.3 **Title Insurance**. Buyer shall have received, at Buyer's expense, at least ten (10) days prior to the Closing Date, a commitment for title insurance from a title insurance company acceptable to Buyer (the "*Title Company*"), covering the Real Property, in form and substance satisfactory to Buyer, disclosing no liens or encumbrances affecting the Real Property to be conveyed other than (i) those to be released by the Sale Order that the title company will delete from the title policy (as defined hereafter) upon entry of the Sale Order, and (ii) those easements and rights of way that do not interfere with Buyer's use and enjoyment of the Real Property. On the Closing Date and prior to the Closing, Seller, at Buyer's expense, shall have caused the Title Company to issue to Buyer an ALTA owner's policy of title insurance (the "*Title Policy*") effective upon Closing, insuring fee simple marketable title in Buyer subject only to the matters referred to in this subsection.

8.4 **Performance and Satisfactory Completion of Due Diligence**. Sellers represent that they have previously delivered all documents and information requested by Buyer pursuant to Section 6.3 hereof and in the possession or control of Sellers, and shall continue to provide access to Buyer and its accountants, consultants, agents and attorneys to the Assets and all of Seller's books and records regarding the Assets to complete legal and environmental due diligence. Due diligence shall be completed on or before the date that is thirty (30) days after the Sale Order becomes a Final Order, but in no case less than ninety (90) days after full execution of this Agreement (the "**Due Diligence Deadline**"). Buyer shall have been satisfied, in its sole and absolute discretion, with the results of its legal, accounting and business, and environmental due diligence on or before the Due Diligence Deadline.

8.5 **Entry of Sale Order**. The Sale Order in a form reasonably acceptable to Buyer shall have been entered by the Bankruptcy Court, shall find that Buyer is a good faith purchaser for purposes of 11 U.S.C. §363(m), shall be a Final Order, and shall not have been stayed by any order of a court with jurisdiction to do so as of the Closing Date.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 14 of 74

The Sale Order shall authorize the sale of the Assets free and clear of any liens, claims, or encumbrances.

8.6 **Covenants and Representations**. Sellers shall have performed in all material respects all agreements and covenants required hereby to be performed by Sellers prior to or at the Closing Date, and the representations and warranties of Sellers in Article IV shall be true and correct in all material respects as of the Closing Date as if made on such date, unless such representation or warranty speaks expressly as of a particular date.

8.7 **Litigation**. There shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of this transaction contemplated by this Agreement.

8.8 **Instruments of Conveyance, Certificates**. Sellers shall have executed and delivered to Buyer all of the documents provided for in Section 3.2.

8.9 **Possession of the Assets**. Buyer shall have received physical possession of the Assets and Sellers shall have used their reasonable best efforts in furtherance of the foregoing.

8.10 **Water Usage, Wastewater Discharge, and Sewer Permits**. Buyer shall have obtained, upon terms and conditions reasonably acceptable to Buyer, all rights and permits for water usage and wastewater or sewer discharge deemed necessary or appropriate, in Buyer's sole discretion, in connection with Buyer's intended use of the Assets.

## ARTICLE IX

## MISCELLANEOUS

9.1 **Insurance**. Sellers have informed Buyer that they are aware of no liability or fire insurance in force against the Real Property or the Personal Property. Sellers do not have the resources to purchase such insurance.

9.2 **Risk of Loss**. Sellers bear the risk of loss prior to the Closing.

9.3 **Proration of Taxes**. Sellers shall be responsible for and agree to pay when due all sales and use taxes arising out of the transactions contemplated hereunder to the extent Sellers are not exempt from paying such taxes under the Bankruptcy Code. All ad valorem taxes and assessments against or in respect of the Assets for the taxable period which includes the Closing Date shall be prorated between Seller and Buyer as set forth hereafter. All real estate taxes against or in respect of the Real Property for the taxable period prior to the Closing Date shall be prorated between Seller and Buyer as of the day prior to the Closing Date. In the event the amount of such taxes and assessments cannot be ascertained as of the Closing Date, proration shall be made on the basis of the preceding year and to the extent that such proration may be inaccurate, each party shall make such payment to the other after the tax statements have been received as may be

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 15 of 74

necessary to allocate such taxes properly between Seller and Buyer as of the Closing Date.

9.4 **Termination**. This Agreement may be terminated prior to the Closing:

(i) by mutual written consent executed by both Buyer and Sellers (subject to the approval of the Bankruptcy Court) at any time;

(ii) by Buyer if the conditions precedent set out in Sections 8.1, 8.2, 8.3, 8.4, 8.6 (to the extent required prior to Closing), 8.7, 8.8, 8.9, or 8.10 are not met, or if any event occurs which renders satisfaction of one or more of the conditions to Buyer's obligations set forth in Article VIII impossible;

(iii) by Sellers if the conditions precedent set out in Sections 7.3 (to the extent required prior to Closing) or 7.4 are not met, or if any event occurs which renders satisfaction of one or more of the conditions to Sellers' obligations set forth in Article VII impossible; or

(iv) by Buyer if the Sale Order has not been entered within sixty (60) days of full execution of this Agreement.

9.5 **In the Event of Termination; Remedies**. In the event of termination of this Agreement pursuant to Section 9.4:

(i) Schwalbe shall immediately refund to Buyer the Earnest Money plus any interest accrued thereon while held in WCL's debtor-in-possession account;

(ii) each party shall redeliver all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same; and

(iii) all obligations of the parties hereto under this Agreement shall terminate and there shall be no liability of any party hereto to any other party and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement; provided that the foregoing shall not relieve any party of liability for damages actually incurred by any other party as a result of any breach of this Agreement resulting from the willful misconduct or reckless or grossly negligent act or omission of the party permitting, causing or committing such breach.

9.6 **Assignment; Successors**. Upon approval of this Agreement by the Bankruptcy Court, except as provided above in section 2.1, neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of all other parties to this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, including

10

without limitation any Chapter 11 or Chapter 7 trustee appointed in the WCL Bankruptcy Case or the Investments Bankruptcy Case, and no other person shall have any right, benefit or obligation hereunder. Notwithstanding anything to the contrary, Buyer may assign any of its rights under this Agreement to any subsidiary or controlled affiliate of Buyer.

      9.7    **Notices**. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by telecopy, upon receipt of telephonic confirmation; the date after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. In each case notice shall be:

| | |
|---|---|
| If to Sellers, addressed to: | Richard Schwalbe, Chapter 7 Trustee |
| | 478 Green Glen Way |
| | Mill Valley, CA 94941 |
| | e-mail: rjschwalbe@aol.com |
| | Fax (415) 388-0740 |
| | |
| | Jeffrey E. Hutchinson, Chapter 7 Trustee |
| | 1312 Page Street |
| | San Francisco, CA 94117 |
| | e-mail: jeff@harbour-partners.com |

with a copy to

| | |
|---|---|
| Attorneys for Sellers: | Patricia H. Lyon |
| | French & Lyon |
| | 22 Battery Street, Suite 404 |
| | San Francisco, CA 94111 |
| | e-mail: phlyon@aol.com |
| | Fax: 415-243-8200 |
| | |
| | Jeremy W. Katz |
| | Pinnacle Law Group LLP |
| | 425 California Street, Suite 1800 |
| | San Francisco, CA 94104 |
| | e-mail: jkatz@pinnaclelawgroup.com |
| | Fax: 415-394-5003 |
| | |
| If to Buyer, addressed to: | John S. Olbrych |
| | Angelica Textile Services, Inc. |
| | 1105 Lakewood Parkway, Suite 210 |
| | Alpharetta, GA 30009 |
| | e-mail: jolbrych@angelica.com |
| | Fax: 678-823-4168 |

11

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 17 of 74

with a copy to

Steven L. Frey
Angelica Corporation
424 South Woods Mill Rd., Suite 300
Chesterfield, MO 63017
e-mail: sfrey@angelica.com
Fax: 314-854-3949

and to

Attorneys for Angelica:

Christopher Graver
Stinson Morrison Hecker LLP
1850 North Central, Suite 2100
Phoenix, AZ 85251
Email: cgraver@stinson.com
Fax: 602-240-6925

or to such other place and with such other copies as either party may designate as to itself by written notice to the others.

9.8 **Entire Agreement; Amendments and Waivers**. This Agreement, and all Exhibits and Schedules attached or to be attached hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No amendment to or waiver of this Agreement shall be binding unless executed in writing by or on behalf of the party to be bound thereby and approved by the Bankruptcy Court in each Bankruptcy Case. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

9.9 **Construction**. The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. Unless stated to the contrary, all references to Articles, Sections paragraphs or clauses herein shall be to the specified Article, Section, paragraph or clause of this Agreement, and all references to Exhibits and Schedules shall be to the specified Exhibits and Schedules attached hereto. All Exhibits and Schedules attached are made a part hereof. All terms defined herein shall have the same meaning in the Exhibits and Schedules, except as otherwise provided therein. All references in this Agreement to "this Agreement" shall be deemed to include the Exhibits and Schedules attached hereto. The terms "hereby", "hereto", "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used. Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees. The term "including"

12

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 18 of 74

when used herein shall mean "including, without limitation." Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

9.10 **Third Party Beneficiaries**. No Person other than the parties hereto and parties to the Exhibits, shall have any rights or claims under this Agreement. Parties to the Exhibits hereto shall be third party beneficiaries of this Agreement.

9.11 **Multiple Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.12 **Invalidity**. In the event that any one or more of the provisions, or any portion thereof, contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

9.13 **Further Assurances**. Without limiting any other rights or obligations of the parties contained in this Agreement, following the Closing, Sellers agree to execute such documents, instruments or conveyances and take such actions as may be reasonably requested by Buyer's counsel and otherwise reasonably cooperate with Buyer, its Affiliates and their respective Representatives in connection with any action that may be necessary or advisable to put Buyer in possession of the Assets.

9.14 **Cumulative Remedies**. All rights and remedies of either party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies.

9.15 **Termination of Covenants, Representations, and Warranties**. The representations, and warranties made by Sellers and/or Buyer herein shall not terminate as of the Closing. Buyer shall have the right to seek indemnification subsequent to the Closing based on a breach of a representation and/or warranty or any covenant made by Sellers herein or in any other document, certificate or instrument entered into by Sellers in connection herewith; provided that Schwalbe and Hutchinson shall not be personally liable to Buyer hereunder except in the case of Schwalbe's or Hutchinson's gross negligence or willful misconduct.

9.16 **Bidding Procedures; Reimbursement of Buyer's Expenses**. The Sales Procedures Order shall contain at least the following terms: In the event that other parties submit competing bids for the Assets, such parties shall make an earnest money deposit equal to the deposit made by Buyer under §2.4 hereof. Bidding increments shall not be less than $100,000. In the event that another bidder makes a higher bid than Buyer and such offer is determined by the Trustees and approved by the Bankruptcy Court to be the highest and best offer, then, subject to application by Buyer and Bankruptcy Court

13

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 19 of 74

approval, up to $100,000 of such additional bid amount shall be paid to Buyer by Sellers out of the proceeds of sale of the Assets as reimbursement for its actual costs and expenses (including, without limitation, reasonable attorneys' fees) in performing due diligence, preparing and entering into this Agreement, and preparing other documents and taking other actions incident thereto. The Sales Procedures Order shall approve the obligations in this paragraph, which shall thereafter be binding on Buyer and Sellers.

[The next page is the execution page.]

DB04/521409.0028/2131939.2 MD31

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their respective duly authorized officer or manager as of the day and year first above written.

**SELLERS:**

**Bankruptcy Estate of Lohrey Enterprises, Inc., dba West Coast Linen**

By:_____

   Richard Schwalbe, as Chapter 7 Trustee

**Bankruptcy Estate of Lohrey Investments, LLC, Debtor**

By:_____

 Jeffrey E. Hutchinson, Chapter 7 Trustee

**BUYER:**

**Angelica Textile Services, Inc.**

By:_____

Name: John W. Partridge

Its: VP + Treasurer

15

DB04/521409.0028/2131939.2 MD31

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by their respective duly authorized officer or manager as of the day and year first above written.

**SELLERS:**

**Bankruptcy Estate of Lohrey Enterprises, Inc., dba West Coast Linen**

By: _____

Richard Schwalbe, as Chapter 7 Trustee

**Bankruptcy Estate of Lohrey Investments, LLC, Debtor**

By: _____

Jeffrey E. Hutchinson, Chapter 7 Trustee

**BUYER:**

**Angelica Textile Services, Inc.**

By: _____

Name: John W. Partridge

Its: VP + Treasurer

DB04/521409.0028/2131939.2 MD31

15

# EXHIBIT A

## Description of Real Property to be Acquired

Real property situated in the City of Gilroy, County of Santa Clara, State of California, described as follows:

PARCEL 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "PARCEL MAP IN THE CITY OF GILROY, SANTA CLARA, COUNTY, CALIFORNIA, LOT MERGER ALL OF PARCEL 'B', BOOK 481 OF MAPS, PAGE 13 AND PARCELS 2 AND 3, BOOK 401 OF MAPS, PAGES 56 AND ALL OF PARCEL 1, 1753, OFFICIAL RECORDS, PAGE 212." WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA ON APRIL 10, 1990, IN BOOK 612 OF MAPS PAGE(S) 40.

APN: 841-59-022

# EXHIBIT B

## MCI Stay Relief Order Showing Equipment Excluded From Sale

DB04/521409.0028/2131939.2 MD31

1   W. Michael Celestre - State Bar # 55031

2          The Law Offices of
        **W. MICHAEL CELESTRE**
3       3650 Mt. Diablo Blvd., Suite 180
          Lafayette, California 94549
4            925-283-9977

5

6   **Attorneys for MCI Computer**
    **Leasing, Inc.**
7

8

9
                **UNITED STATES BANKRUPTCY COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11

12
    In re:
13
    **L O H R E Y     E N T E R P R I S E S ,     I N C .**
14          **Bk. No. 08-12206 AJ**

15                                              Chapter 7
                    Debtor.
16   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . /   **RS No. 08-0002 WMC**

17

18

19                **ORDER TERMINATING AUTOMATIC STAY**

20
                        **DATE, TIME, PLACE OF HEARING**
21   **JANUARY 22, 2009; 9:00 A.M.; 99 SOUTH "E" STREET, SANTA ROSA, CA 95404**

22

23          The motion for an order for relief from the provisions of the automatic stay in this

24   proceeding (the "Motion"), filed by MCI Computer Leasing, Inc.("MCI"), came on for hearing on January 22,

25   2009, at 9:00 a.m., before the above-entitled court. W. Michael Celestre appearing on behalf of MCI, and there

26   was no appearance on behalf of Debtor Lohrey Enterprises, Inc., or on behalf of the Trustee, Richard Schwalbe.

                                        1

1  Having reviewed the pleadings, the evidence presented in support of the motion, and the record in the bankruptcy
2  case, and finding that good cause exists for the relief granted herein, and other good cause appearing,

3         IT IS ORDERED, that the relief requested in the Motion is granted.

4         IT IS FURTHER ORDERED that the automatic stay is modified as to MCI, and as to any
5  successor-in-interest of MCI, with respect to the equipment described in the Motion as follows: 64 LoCut
6  Poly-Trux, Model No. BLY72; a Jensen Small Piece Ironer, Model No. SP-EXP-10-2; 2 Jensen Large Piece
7  Ironer, Model No. LP-EXP-10-2; a Jensen Flatwork System, Model No. 4000; a Jensen Jenview, Model 6000;
8  an Air-cooled Rotary Compressor, Model No. VCC200; a Milner 2-Cake Shuttle, Model No. 2CSH; an
9  Energenics Lint Filter, Model No. MLF3636; a Boiler, Model No. 4WG200-800; a Poly-Trux, Model
10 Poly-Trux; 2 Gas Heated Dryers, Model No. TG1; a Collar Cuff Press, Model No. Pamela; 55 Meese Orbitron
11 Poly-Trux, Model No. 72P; and 64 LoCut Poly-Trux, Model No. BLT72 ("Leased Equipment"). MCI, and/or
12 its successor-in-interest, and their agents and representatives, may exercise all remedies under the Master
13 Equipment Lease Agreement with respect to the Leased Equipment, including without limitation the following:
14 taking possession of the Leased Equipment, and disposing of the Leased Equipment by public or private sale.

16        IT IS FURTHER ORDERED that notwithstanding Federal Rule of Bankruptcy Procedure
17 4001(a)(3), this Order shall be effectively immediately upon its entry.

18        IT IS FURTHER ORDERED that this Order is binding and effective despite any
19 conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
20 Dated: January 26, 2009

Alan Jaroslovsky
U.S. Bankruptcy Judge

2

# EXHIBIT C

## List of Personal Property to be Acquired

DB04/521409.0028/2131939.2 MD31

Lohrey finance
West Coast Linen EQUIP LIST UPDATED July 1 2009.xls

LOHREY
Equipment list

Lohrey Equipment List

Revised Exhibit A

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 001 | Milnor model 6458TG1R dryer, s/n AAF/0301272001, (2004), 300 lb. capacity, front loading, rear discharge | | GSL/Vestin/Owens (Disputed) |
| 002 | Milnor model 6458TG1R dryer, s/n AAG/0301434201(2004), 300 lb. capacity, front loading, rear discharge | | GSL/Vestin/Owens (Disputed) |
| 003 | Milnor model 6458TG1R dryer, s/n AAG/0301434101, (2004), 300 lb. capacity, front loading, rear discharge | | GSL/Vestin/Owens (Disputed) |
| 006 | Jensen folder, Silverline Plus, s/n 551317, 130" W, with Jensen CT1081 computer controls | | GSL/Vestin/Owens (Disputed) |
| 007 | Jensen folder, Silverline Plus, s/n 551316, 130" W, with Jensen CT1081 computer controls | A | GSL/Vestin/Owens (Disputed) |
| 008 | Jensen folder, Silverline Plus, s/n 551287, 130" W, with Jensen CT1081 computer controls | | GSL/Vestin/Owens (Disputed) |
| 009 | Jensen folder, Silverline Plus, s/n 551289, 130" W, with Jensen CT1081 computer controls | | GSL/Vestin/Owens (Disputed) |
| 010 | Jensen folder, Silverline Plus, s/n 551279, 130" W, with Jensen CT1081 computer controls | | GSL/Vestin/Owens (Disputed) |
| 011 | Jensen folder, Silverline Plus, s/n 551280 (new 2003 - 2006), 130" W, with Jensen CT1081 computer controls | | GSL/Vestin/Owens (Disputed) |
| 012 | Milnor model MP1603R hydraulic press type extractor, s/n A-AJ/0401765801 130 lb. capacity (new 2004) | | GSL/Vestin/Owens (Disputed) |
| 013 | Milnor model MP1603R hydraulic press type extractor, s/n AAJ/0401816401, 130 lb. capacity (new 2004) | | GSL/Vestin/Owens (Disputed) |
| 014 | Jensen model Logic 2000 feeder, s/n 102091 (new 2003), 141" W, with CT1092 computer controls | | GSL/Vestin/Owens (Disputed) |
| 015 | Jensen model Logic 2000 feeder, s/n 102137 (new 2004), 141" W with CT1092 computer controls | | GSL/Vestin/Owens (Disputed) |
| 016 | Jensen model Logic 2000 feeder, s/n 102138 (new 2004), 141" W with CT1092 computer controls | | GSL/Vestin/Owens (Disputed) |
| 017 | Jensen model Logic 2000 feeder, s/n 102092 (new 2003), 141" W, with CT1092 computer controls. | | GSL/Vestin/Owens (Disputed) |
| 018 | Milnor model 48040F7J washer, s/n AAG/0201101101 (new 2002), 275 lb. capacity, 115 psi | | GSL/Vestin/Owens (Disputed) |
| 019 | Approximately (1,000) plastic laundry carts | | GSL/Vestin/Owens (Disputed) |
| 020 | Milnor (Energenetics) model MLF3636 lint collector, s/n NOT Visible, with duct work and roof mounted blower | | GSL/Vestin/Owens (Disputed) |
| 022 | Milnor model 5805ATG2 dryer, s/n ABH/57933365, 220 lb. capacity, natural gas fired, dryer #1, 110 psi | | GSL/Vestin/Owens (Disputed) |
| 023 | Milnor model 30022V6J s/s washer, 60 lb. capacity, s/n AAU0401751201, with E-P Plus controls, Knight-Trak II data mangement systems (2004) | | GSL/Vestin/Owens (Disputed) |

page 1 of 8

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 9:05 AM
On 8/5/2009

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 024 | Milnor model 30022V6J s/s washer, 60 lb. capacity, s/n AAU0401751101, with E-P Plus controls, Knight-Trak II data mangement systems (2004) | | GSL/Vestin/Owens (Disputed) |
| 025 | Cissell model 144CD42G dryer, s/n 122-185, 110 lb. capacity | | GSL/Vestin/Owens (Disputed) |
| 026 | Cissell model 144CD42G dryer, s/n 2001G45478, 110 lb. capacity | | GSL/Vestin/Owens (Disputed) |
| 027 | Cissell model 144CD42G dryer, s/n 2010038375, 110 lb. capacity | | GSL/Vestin/Owens (Disputed) |
| 028 | Cissell model 144CD42G dryer, s/n 8616-287, 110 lb. capacity | A | GSL/Vestin/Owens (Disputed) |
| 029 | Ty-Tech model EXT-60 package tyer  serial number not available | | GSL/Vestin/Owens (Disputed) |
| 030 | Ty-Tech model EXT-60 package tyer  serial number not available | | GSL/Vestin/Owens (Disputed) |
| 031 | Ty-Tech model EXT-60 package tyer  serial number not available | | GSL/Vestin/Owens (Disputed) |
| 032 | Ty-Tech model EXT-60 package tyer  serial number not available | Engineering | GSL/Vestin/Owens (Disputed) |
| 033 | Ty-Tech model EXT-60 package tyer  serial number not available | Engineering | GSL/Vestin/Owens (Disputed) |
| 034 | GSE model 68/685 in ground scale with digital readout, s/n with printer and keypad | outside | GSL/Vestin/Owens (Disputed) |
| 035 | Norman model 4511A cart dumper, s/n 9122 | | GSL/Vestin/Owens (Disputed) |
| 036 | Assorted belt and roller, Take-A-Way conveyors | | GSL/Vestin/Owens (Disputed) |
| 037 | Air Chicago small piece folder, s/n 51884204 | | GSL/Vestin/Owens (Disputed) |
| 038 | Auto soil sort system | | GSL/Vestin/Owens (Disputed) |
| 041 | Milnor shuttle system consisting of: | | GSL/Vestin/Owens (Disputed) |
| 042 | 4 - 42" x 9' loading conveyors | | GSL/Vestin/Owens (Disputed) |
| 043 | Milnor 3-way conveyor, 76' long | | GSL/Vestin/Owens (Disputed) |
| 044 | 6 - Milnor 42" x 15' loading conveyors | | GSL/Vestin/Owens (Disputed) |
| 045 | Milnor auto load shuttle, model COSHA113, s/n 5793272, (1991) | | GSL/Vestin/Owens (Disputed) |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

**LOHREY**
Equipment list

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 047 | **1991 Milnor CBW batch washer consisting of Miltron & loading conway** | | GSL/Vestin/Owens (Disputed) |
| 048 | 16 - Modules with consecutive s/ns from 5793301 to 5793315 | | GSL/Vestin/Owens (Disputed) |
| 049 | Model 76032C2L discharge module, s/n 5793330 | | GSL/Vestin/Owens (Disputed) |
| 050 | Reuse tank, s/n 5793340 | | GSL/Vestin/Owens (Disputed) |
| 051 | Flowfill, s/n 5793342 | | GSL/Vestin/Owens (Disputed) |
| 052 | Flowsplit, s/n 5793341 | | GSL/Vestin/Owens (Disputed) |
| 053 | **1994 Milnor CBW batch washer consisting of Miltron & loading conway** | | GSL/Vestin/Owens (Disputed) |
| 054 | 16 - Modules with consecutive s/ns from 6420602 to 6420615 | | GSL/Vestin/Owens (Disputed) |
| 055 | Model 76032C2F discharge model, s/n 6420601 | | GSL/Vestin/Owens (Disputed) |
| 056 | Reuse tank, s/n 6420640 | | GSL/Vestin/Owens (Disputed) |
| 057 | Flowfill, s/n 6420642 | | GSL/Vestin/Owens (Disputed) |
| 058 | Flowsplit, s/n 6420641 | | GSL/Vestin/Owens (Disputed) |
| 059 | Milnor model 52038WTN 300 lb. capacity washer, s/n 5793406 (1991), (located outside under tarp and non-operational) | outside | GSL/Vestin/Owens (Disputed) |
| 060 | Milnor model 52038WTN 300 lb. capacity washer, s/n 5793405 (1991), (located outside under tarp and non-operational) | outside | GSL/Vestin/Owens (Disputed) |
| 061 | Milnor model 52038WTN 300 lb. capacity washer, s/n 6175901 (1993) (located outside under tarp and non-operational) | outside | GSL/Vestin/Owens (Disputed) |
| 062 | Milnor model 52038WTN 300 lb. capacity washer, s/n N/A, (located outside under tarp and non-operational) | outside | GSL/Vestin/Owens (Disputed) |
| 063 | Colmac model 2000-2R-G/SP steam tunnel, s/n 091791MMIC0729 | | GSL/Vestin/Owens (Disputed) |
| 064 | (3) Milnor model 58080TG1 300 lb. capacity gas dryers, s/n 6175906 (1993), 6420686 (1994) and 5793430 (1990), (outside under tarp, non-operational) | outside | GSL/Vestin/Owens (Disputed) |
| 065 | Milnor model 42026DHP 125 lb. capacity washer, s/n 5793430, (1990) | outside | GSL/Vestin/Owens (Disputed) |
| 066 | Unimac model UW85PVQV3003 85 lb. capacity washer, s/n M0397098489 | | GSL/Vestin/Owens (Disputed) |
| 067 | Pioneer all s/s cart washing booth, 34' long with 60' long track system (recently rebuilt) | | GSL/Vestin/Owens (Disputed) |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 9:05 AM
On 8/5/2009

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 068 | Jensen model 396 3-roll ironer, s/n 10891 (1991) | | GSL/Vestin/Owens (Disputed) |
| 069 | Jensen model 396 3-roll ironer, s/n N/A | | GSL/Vestin/Owens (Disputed) |
| 070 | Jensen model 396 3-roll ironer, s/n N/A | | GSL/Vestin/Owens (Disputed) |
| 071 | Jensen model 386 3-roll ironer, s/n 11127 (1992) | | GSL/Vestin/Owens (Disputed) |
| 072 | In ground cart scale with GSE 655 digital readout model 663 sn 087688 | | GSL/Vestin/Owens (Disputed) |
| 073 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6553, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 074 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6552, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 075 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6551 (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 076 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6550, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 077 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6549 (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 078 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6519, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 079 | Milnor 10-module batch washer, (in yard, non-operational) (1992) | outside | GSL/Vestin/Owens (Disputed) |
| 080 | Milnor 10-module batch washer, (in yard, non-operational) (1992) | outside | GSL/Vestin/Owens (Disputed) |
| 081 | American 8-roll ironer, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 082 | D' Hooge 3-roll ironer, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 083 | D' Hooge 4-roll ironer, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 084 | Troy 8-roll ironer, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 085 | Troy 8-roll ironer, (non-operational) | A | GSL/Vestin/Owens (Disputed) |
| 087 | Sullair model LS-120-50 H/VKT 50 hp rotary screw air compressor, s/n 003-145334 | | GSL/Vestin/Owens (Disputed) |
| 088 | Sullair model SR-250 air dryer, s/n 2501460003 | | GSL/Vestin/Owens (Disputed) |
| 089 | Sullair model SR-500 air dryer, s/n 2767380007 | | GSL/Vestin/Owens (Disputed) |

Lohrey Finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 9:05 AM
On 8/5/2009

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 090 | Sullair model 12B-50H-WCAC-2KT 50 hp rotary screw air compressor, s/n 003-94835 not operational | | GSL/Vestin/Owens (Disputed) |
| 092 | Cleaver Brooks model CP200-400 gas fired boiler, s/n L-91222 (1982), 200/400 hp, 150 psi | | GSL/Vestin/Owens (Disputed) |
| 093 | McClain model E-11 vertical trash compactor, s/n 11E11982849 | | GSL/Vestin/Owens (Disputed) |
| 094 | (3) Stainless steel 8,000 gallon holding tankswith steam bundle anf Kemco pumps | | GSL/Vestin/Owens (Disputed) |
| 095 | Pentair 2-tank water softning system | | GSL/Vestin/Owens (Disputed) |
| 096 | Ellis water reclaim system with s/s open top sludge tank, 8,000 gallon s/s water tank, filter press, pumps, drum filter, etc. (has not operated for 8 years) | | GSL/Vestin/Owens (Disputed) |
| 097 | Jensen type butterfly folder, s/n 37-6234 (2004) | A | GSL/Vestin/Owens (Disputed) |
| 098 | Jensen type butterfly folder, s/n 37-6227-1P (2004) | | GSL/Vestin/Owens (Disputed) |
| 099 | Jensen jet towel/garment folder, s/n 300872 (2003) | | GSL/Vestin/Owens (Disputed) |
| 100 | Jensen jet towel/garment folder, s/n 300869 (2003) | | GSL/Vestin/Owens (Disputed) |
| 101 | Jensen jet towel/garment folder, s/n 300894 (2003) | | GSL/Vestin/Owens (Disputed) |
| 102 | Jensen jet towel/garment folder, s/n 300915 (2003) | | GSL/Vestin/Owens (Disputed) |
| 103 | Bunn tying machine, s/n 90274, (2008) | | GSL/Vestin/Owens (Disputed) |
| 104 | Bunn tying machine, s/n 90275 (2008) | | GSL/Vestin/Owens (Disputed) |
| 105 | Bunn tying machine, s/n 90273 (2008) | | GSL/Vestin/Owens (Disputed) |
| 106 | Milnor model 6458TGIL dryer, s/n 0502442401 (2005) | | GSL/Vestin/Owens (Disputed) |
| 107 | Milnor model 6458TGIL dryer, s/n 0502442201 (2005) | | GSL/Vestin/Owens (Disputed) |
| 108 | Milnor model 6458TGIL dryer, s/n 0502442301 (2005) | | GSL/Vestin/Owens (Disputed) |
| 109 | (3) Milnor model 58058TG2 dryers, s/n 5998004 (1992), 6420685 (1994) and 5694387 (1991) | | GSL/Vestin/Owens (Disputed) |
| 111 | Jensen model Variant 2000 2-station feeder, s/n 200035, (2004) | | GSL/Vestin/Owens (Disputed) |
| 112 | Jensen model Classic high speed combination folder, s/n 760672, (2004) | | GSL/Vestin/Owens (Disputed) |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 9:05 AM
On 8/5/2009

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 113 | (3) Milnor model 58080TG1 gas dryers, s/n 6420687 (1994), 5793255 (1991) and 5793256 (1991) | | GSL/Vestin/Owens (Disputed) |
| 114 | Milnor model Dryvac02 auto lint system, s/n 5793214 (1991) | | GSL/Vestin/Owens (Disputed) |
| 115 | Milnor model Dryvac02 auto lint system, s/n 5793428 (1991) | | GSL/Vestin/Owens (Disputed) |
| 116 | Milnor model 42032F7J washer, s/n 0901413601 | | GSL/Vestin/Owens (Disputed) |
| 121 | Jensen model P72-18 18-module continuous batch washer, s/n 2006806/001, (2004) console & loading conveyor | | GSL/Vestin/Owens (Disputed) |
| 122 | Jensen model SEP72-HD-SE hydraulic extraction press, s/n 2006806/002, (2004), console | | GSL/Vestin/Owens (Disputed) |
| 123 | (3) New lint collectors model MLF1010 | | Western Sales Design GSL/Vestin/Owens (Disputed) |
| 124 | Clark model CG25 LPG forklift, s/n 0463-9393FB, solid tires, triple mast | | GSL/Vestin/Owens (Disputed) |
| 125 | Genie model GS-3246 4' x 8' scissor lift | | GSL/Vestin/Owens (Disputed) |
| | | | |
| | | | |
| | | | |
| | | | |
| | Central folder model Silverline # 550568195 | | GSL/Vestin/Owens (Disputed) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| | | | |
| | | | |
| 140 | Milnor shuttle(2005) sn 0502337101 with console & track | | GSL/Vestin/Owens (Disputed) |
| 141 | Troy sheet spreader | | GSL/Vestin/Owens (Disputed) |
| 142 | seagaw sheet spreader | | GSL/Vestin/Owens (Disputed) |
| 143 | Air Chicago XL, s/n 51419 | | Western States Design/GSL (Disputed) |
| 144 | Air Chicago XL, s/n 51418 | | Western States Design/GSL (Disputed) |
| 145 | Air Chicago XL, s/n 51420 | | Western States Design/GSL (Disputed) |
| 146 | Air Chicago XL, s/n 51417 | | Western States Design/GSL (Disputed) |
| 147 | Chicago S-13-BB, s/n 56570 with stacker | | Western States Design/GSL (Disputed) |
| 148 | Lawson Product Bolt B. with hardware | | GSL/Vestin/Owens (Disputed) |
| 149 | (2) 12ft rolling ladders | | GSL/Vestin/Owens (Disputed) |
| 150 | (20) six shelf rolling wire shelving | | GSL/Vestin/Owens (Disputed) |
| 151 | 4' X 8' light table on wheels | | GSL/Vestin/Owens (Disputed) |
| 152 | (2) 4' X 8' light table no wheels | | GSL/Vestin/Owens (Disputed) |
| 153 | 2' X 4' light table on wheels | | GSL/Vestin/Owens (Disputed) |
| 154 | 30" X 80" folding table | | GSL/Vestin/Owens (Disputed) |
| 155 | (2) 48" X 16" Lite tables | | GSL/Vestin/Owens (Disputed) |
| 156 | GSE model 350 floor scale | | GSL/Vestin/Owens (Disputed) |
| 157 | 3 sets of flow racks with trays | | GSL/Vestin/Owens (Disputed) |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

| Reference number | 2008 Machine description | Location | Creditor claims |
|---|---|---|---|
| 158 | Jensen Model 396 three-roll ironer | | GSL/Vestin/Owens (Disputed) |
| 159 | Semi-electric stackersn 02238 | warehouse | GSL/Vestin/Owens (Disputed) |
| 160 | (24) 8' X 4' Sections pallet racks | warehouse | GSL/Vestin/Owens (Disputed) |
| 161 | (2) 8' X 2' Sections pallet racks | warehouse | GSL/Vestin/Owens (Disputed) |
| 161 | (3) 8' X 2' pallet racks | warehouse | GSL/Vestin/Owens (Disputed) |
| 161 | (3) 8' X 4' pallet racks | warehouse | GSL/Vestin/Owens (Disputed) |
| 161 | D. H. tank with feed pump | | GSL/Vestin/Owens (Disputed) |
| 164 | Various office furniture | | GSL/Vestin/Owens (Disputed) |

_J. L. Oler_ 8/5/09
Accepted
Chief Administrative Officer

# Exhibit D

## EARNEST MONEY DEPOSIT AGREEMENT

**THIS EARNEST MONEY DEPOSIT AGREEMENT** (this "*Agreement*"), dated as of November 24, 2009, is hereby entered into by and between Angelica Textile Services, Inc. ("*Buyer*") and Richard Schwalbe ("*Schwalbe*"), as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Enterprises, Inc., d/b/a West Coast Linen ("*WCL*"), and Jeffrey E. Hutchinson ("*Hutchinson*"), as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Investments, LLC, Debtor ("*Investments*") (Schwalbe and Hutchinson are collectively referred to herein as "*Sellers*").

## R E C I T A L S:

**WHEREAS,** Buyer and Sellers have entered into a Purchase and Sale Agreement (the "*Purchase Agreement*"), effective as of November 24, 2009, in connection with the purchase and sale of certain assets of the Sellers; and

**WHEREAS,** the Purchase Agreement provides, <u>inter alia</u>, that Buyer shall deliver to Schwalbe for deposit into the WCL bankruptcy estate an earnest money deposit in the amount of One Hundred Thousand Dollars ($100,000.00) within three (3) days after the Purchase Agreement is executed (the "*Earnest Money Deposit*") and Schwalbe shall hold said amount in a WCL debtor-in-possession account pursuant to the terms of this Agreement and the Purchase Agreement.

**NOW, THEREFORE,** in consideration of the foregoing premises and the mutual covenants and agreements hereinafter set forth and for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Defined Terms.** Capitalized terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

2. **Earnest Money Deposit Terms.** Schwalbe acknowledges receipt from Buyer of (1) an executed copy of the Purchase Agreement and (2) the Earnest Money Deposit in the amount of One Hundred Thousand Dollars ($100,000.00). The Earnest Money Deposit shall be held by Schwalbe in accordance with this Agreement.

   2.1. Schwalbe shall deposit the Earnest Money Deposit in an insured, interest bearing account. All interest that shall accrue on the Earnest Money Deposit shall constitute the sole property of Buyer and shall be returned to Buyer as provided herein. For purposes of complying with Internal Revenue Code Section 6045(e), Schwalbe is hereby designated as the "person responsible" and the "reporting person" for purposes of filing any informational returns with the Internal Revenue Service concerning this transaction, as may be required by law.

DB04/521409.0028/2131939.2 MD31

2.2. Schwalbe shall not commingle the Earnest Money Deposit with any other funds of Schwalbe or others and shall upon request advise the parties of the number of the account in which the Earnest Money Deposit is made or the number of the aforesaid securities, as the case may be.

3. **Release of Earnest Money Deposit.** Schwalbe shall release the Earnest Money Deposit only as follows:

   3.1. The Earnest Money Deposit shall be released to Buyer immediately if: (a) the Purchase Agreement is terminated in accordance with its terms; (b) any condition precedent in the Purchase Agreement is not timely satisfied; (c) the court presiding over the Case does not approve the sale to Buyer at the Hearing (d) the Sellers materially breach the terms of the Purchase Agreement; or (e) Closing has not occurred by the Closing Date (or any extensions thereof).

   3.2. At Closing the Earnest Money Deposit shall be delivered to, or to the order of, Sellers as part of the payment of the Purchase Price.

   3.3. Schwalbe shall release the Earnest Money Deposit in accordance with the Sale Order or any other order of the Bankruptcy Court.

   3.4. At the time that the Earnest Money Deposit is released, all interest that has accrued on the Earnest Money Deposit shall be delivered to Buyer.

4. **Closing.**

   4.1. All documents, funds and other items to be exchanged at Closing by Sellers pursuant to the Purchase Agreement shall be deposited with Schwalbe prior to Closing.

   4.2. At Closing, Schwalbe shall deliver to Buyer all documents, funds (including interest on the Earnest Money Deposit) and other items to which Buyer is entitled in accordance with the Purchase Agreement.

   4.3. At Closing, Schwalbe shall deliver such documents and make such disposition of the Purchase Price as directed by Bankruptcy Court Order or, absent such direction of the Bankruptcy Court, by unanimous instruction of the Sellers.

   4.4. In no event shall Buyer, subsequent to the Closing, have any obligation or liability of any kind with respect to the Purchase Price or its distribution.

5. **Disputes.** The Bankruptcy Court shall determine any dispute as to whether Schwalbe is obligated to deliver all or any part of the Earnest Money Deposit or as to whom all or any part of the Earnest Money Deposit is to be delivered. In the event of such a dispute, Schwalbe shall either (x) hold the same until receipt by Schwalbe of an authorization in writing, signed by Buyer and all Sellers, directing the disposition of all or any part of the Earnest Money Deposit, or (y) in the absence of such authorization, Schwalbe shall hold the Earnest Money Deposit until receipt of a final order of the Court addressing the rights of the Buyer and Sellers. If such written authorization is not given, or proceedings for such determination by the Court are not begun within fifteen (15) days after a dispute arises,

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 37 of 74

Schwalbe may, but is not required to, bring an appropriate action or proceeding for leave to deposit the Earnest Money Deposit in the registry of the Court pending such determination.

6. **Notices.** All notices, approvals, consents or other communications required or desired to be given hereunder shall be in the form and manner provided in the Purchase Agreement and delivered to each of the parties hereto at their respective addresses set forth in the Purchase Agreement.

7. **Miscellaneous.**

7.1. This Agreement may not be assigned by Schwalbe, Buyer or Sellers, including any assignment by operation of law. Any assignment without the prior written consent of Buyer or Sellers, as the case may be, shall be deemed null and void and of no force or effect.

7.2. This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same Agreement.

7.3. THE RESPECTIVE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY OF THE PARTIES HERETO AGAINST ANY OTHER PARTY HERETO ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**SELLERS:**

**Bankruptcy Estate of Lohrey Enterprises, Inc., dba West Coast Linen**

By:_____
      Richard Schwalbe, as Chapter 7 Trustee

**Bankruptcy Estate of Lohrey Investments, LLC, Debtor**

By:_____
      Jeffrey E. Hutchinson, Chapter 7 Trustee

**BUYER:**

**Angelica Textile Services, Inc.**

By:_____
Name:
Its:

# EXHIBIT B

## Notice of Erratum

Jeffrey Hutchinson, as Chapter 7 Trustee ("Hutchinson") of the Bankruptcy Estate of Lohrey Investments, LLC ("Investments"), and  Jeffry Locke, current Chapter 7 Trustee ("Locke") of the Bankruptcy Estate of Lohrey Enterprises, Inc. ("Enterprises"),[1] hereby give notice of an error in connection with the December 22, 2009 motions filed on behalf of the aforesaid bankruptcy estates for approval of the sale of substantially all assets of the estates (together, the "Sale Motion"), which was approved in open Court on January 22, 2010.

The error corrected by this Notice is as follows:  Hutchinson and Richard Schwalbe, the former Chapter 7 Trustee of the Enterprises bankruptcy estate ("Schwalbe"), engaged in extensive negotiations and exchanged numerous drafts of a Purchase and Sale Agreement ("PSA") with the buyer, Angelica Textile Services, Inc. ("Angelica").  Attached to the Affidavit of Richard Schwalbe  in support of the Sale Motion was a draft PSA dated November 20, 2009, to which were appended the executed signature pages from the final November 24, 2009 version of the PSA.  The parties at all times intended to attach the final November 24, 2009 version. The error was not discovered until after the January 22, 2010 hearing at which the Court approved the sale.

A copy of the correct version of the PSA is attached hereto.  The purchase price and essential terms do not vary from the November 20, 2009 draft.  The primary differences between the draft and final versions of the PSA are that

---

[1] Mr. Locke is the successor Trustee; he was appointed and qualified on February 5, 2009 (Enterprises docket entry no. 292).

(a) The final November 24, 2009 version provides for a due diligence period of thirty (30) days after the order approving the sale (the "Sale Order") becomes final and non-appealable. PSA at section 8.4. [2]

(b) The final November 24, 2009 version does not restrict the refundability of the earnest money deposit. PSA at section 2.4.

(c) The language with respect to Buyer's obtaining water, wastewater and sewer discharge permits was revised. PSA at section 8.10

Hutchinson and Schwalbe recommended approval based on the final PSA, including the due diligence period, understanding that successful completion of due diligence was a condition to closing. Hutchison and Locke believe that the inadvertent attachment of the draft PSA to Mr. Schwalbe's affidavit had no substantive effect on the approval process. They file this Notice of Erratum to provide the Court with accurate information while the Court considers entry of the proposed Sale Order, which is being lodged concurrently herewith.

---

[2] Angelica was conducting due diligence at its expense at the time of the filing of the Sale Motion, and has continued to conduct due diligence since the Court approved the sale on January 22, 2010.

# EXHIBIT C



**Stewart Title of California, Inc**
1101 Civic Drive
Walnut Creek, CA 94596
(925) 945-6400  Phone
(925) 945-6415  Fax

# PRELIMINARY REPORT

Order Number        :  261418
Title Unit Number   :  1362

Buyer/Borrower Name:  :  Angelica Enterprises
Seller Name:           :  Lohrey Investments LLC
Property Address: 8190 Murray Avenue, Gilroy, California

In response to the above referenced application for a Policy of Title Insurance, Stewart Title of California, Inc. hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referenced to as an Exception on Schedule B or not excluded from coverage pursuant to the printed Schedules, Conditions, and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on covered Risks of said policy or policies are set forth in Exhibit A attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limits of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report, (and any supplements or amendments thereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance a binder or commitment should be requested.

Dated as of: October 27, 2009 at 7:30 a.m.

Christine Pettyjohn, Title Officer

**When replying, please contact Jackie Boccabella, Escrow Officer**

Stewart Title of California, Inc.
700 Irwin Street, Suite 203
San Rafael, CA  94901
(415) 454-9323
(415) 454-7301  Fax

File Number:  261418

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 44 of 74

# PRELIMINARY REPORT

The form of Policy of Title Insurance contemplated by this report is:

☒ California Land Title Association Standard Coverage Policy

☐ American Land Title Association Owners Policy

☐ American Land Title Association Residential Title Insurance Policy

☒ American Land Title Association Loan Policy

☐ California Land Title Association Homeowners Policy

☐ ALTA Short Form Residential Loan Policy (06/16/07)

☐ 2006 ALTA Loan Policy

# SCHEDULE A

The estate or interest in the land hereinafter described or referred to covered by this report is:

Fee

Title to said estate or interest at the date hereof is vested in:

Lohrey Investments, LLC, a California Limited Liability Company

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 45 of 74

# LEGAL DESCRIPTION

**The land referred to herein is situated in the State of California, County of Santa Clara, City of Gilroy, and described as follows:**

Parcel 1, as shown on that certain Map entitled, "Parcel Map", which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California, on April 10, 1990, in Book 612, of Maps, at Page 40.

APN: 841-59-022
ARB: 841-01-095.02.01;
841-01-095.03;
841-01-095.01;
841-01-099.01

(End of Legal Description)

# SCHEDULE B

**At the date hereof, exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy or policies would be as follows:**

**Taxes:**

A.  General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2009 - 2010
    1st Installment:    $42,761.83, OPEN
    2nd Installment:    $42,761.83, OPEN
    Parcel No.:             841-59-022
    Code Area:              02-000

B.  Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2008:                     841-59-022.00  Regular

    Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:
    Amount:                 $43,546.74
    By:                     November 30, 2009

C.  Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2008:                     841-59-022.99  Addition

    Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:
    Amount:                 $348.94
    By:                     November 30, 2009

D.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

E.  Any unpaid and/or delinquent Bond or Assessment amounts for (District and Bond or Assessment Number) which may have been removed from the rolls of the County Tax Assessor and which may have been removed from tax bills and tax default redemption amounts.

F.  Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment maps or notices filed by said districts. Said assessments are collected with the County Taxes.

**Exceptions:**

1.  Any adverse claim based upon the assertion that:
    (a) Said land or any part thereof is now or at any time has been below the highest of the high watermarks of the creek hereinafter mentioned, in the event the boundary of said creek has been artificially raised or is now or at any time has been below the high watermark, if said creek is in its natural state.
    (b) Some portion of said land has been created by artificial means or has accreted to such portion so created.

File Number: 261418                                                    Page 4 of 16

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 47 of 74

(c) Some portion of said land has been brought within the boundaries thereof by an avulsive movement of the creek, or has been formed by accretion to any such portion.

2.  An easement for electric transmission lines and private telephone line and rights incidental thereto in favor of Sierra and San Francisco Power Company as set forth in a document recorded August 27, 1912, in Book 393, of deeds, Page 65, affects a portion of said land.

3.  The matters contained in an instrument entitled "Agreement" upon the terms therein provided recorded February 8, 1967, in Book 7634, Page 706, as Instrument No. 3180918 of Official Records.

4.  An easement or other provisions for the purpose of private storm drainage and rights incidental thereto as shown on the recorded map, which affects the northeasterly 10 feet of the northwesterly 10 feet of said land.

5.  The matters contained in an instrument entitled "Corporation Grant Deed" upon the terms therein provided recorded April 2, 1981, in Book F997, Page 526, as Instrument No. 7020988 of Official Records.

6.  The matters contained in an instrument entitled "Property Development Agreement" upon the terms therein provided recorded April 20, 1990, in Book L328, Page 514, as Instrument No. 10494709 of Official Records.

7.  An easement for utilities and communication facilities and rights incidental thereto in favor of Pacific Bell and Pacific Gas and Electric Company as set forth in a document recorded August 28, 1990, in Book L462, Page 1213, as Instrument No. 10637733 of Official Records, affects a portion of said land. .

    An agreement to modify the above easement was recorded December 11, 1990, in Book L563, Page 1147, as Instrument No. 10747054 of Official Records.

8.  Terms and provisions of a lease executed by David W. Lohrey, as lessor, and Lohmar, a joint venture, as lessee, a memorandum of which is recorded March 1, 1990, in Book L274, Page 926, as Instrument No. 10439672 of Official Records.

    The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

9.  Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

    | | |
    |---|---|
    | Amount: | $2,750,000.00 |
    | Dated: | August 22, 2003 |
    | Trustor: | Lohrey Investments LLC |
    | Trustee: | Investors Yield, Inc., a California corporation |
    | Beneficiary: | William C. Owens, trustee of the Owens Trust |
    | Recorded: | September 11, 2003, as Instrument No. 17341284 of Official Records |
    | Loan No.: | 50898 |

    The beneficial interest in said deed of trust was assigned of record by assignment:

    | | |
    |---|---|
    | To: | The Milton N. Owens Family Limited Partnership, a California Limited Partnership |
    | Recorded: | September 11, 2003, as Instrument No. 17341286 of Official Records |

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 48 of 74

The above instrument has been subordinated to Deed of Trust recorded April 28, 2005, as Instrument No. 18344131, of Official Records, by that certain agreement recorded April 28, 2005, as Instrument No. 18344126, of Official Records.

The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records, by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

A Notice of default recorded October 22, 2008, as Instrument No. 20026491 of Official Records.

The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

10. Terms and provisions of a lease West Coast Linen, as lessee as disclosed by an Assignment of Rents and Leases, recorded September 12, 2003, as Instrument No. 17343464 of Official Records.

   The above instrument has been subordinated to Deed of Trust recorded September 11, 2003, as Instrument No. 17341284 of Official Records, by that certain agreement recorded September 11, 2003, as Instrument No. 17341286 of Official Records.

   The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

11. Financing Statement executed by Lohrey Investments, LLC to Lohrey Enterprises, Inc., a California corporation recorded September 11, 2003, as Instrument No. 17341287, of Official Records.

   Said Financing Statement have been modified by an instrument, recorded October 14, 2005, as Instrument No. 18625693 of Official Records.

12. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,650,000.00 |
| Dated: | December 2, 2003 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | December 30, 2003, as Instrument No. 17552609 of Official Records |
| Loan No.: | 50925 |

   The above instrument has been subordinated to Deed of Trust recorded April 28, 2005, as Instrument No. 18344131, of Official Records, by that certain agreement recorded April 28, 2005, as Instrument No. 18344127 of Official Records.

   A Notice of default recorded October 30, 2008, as Instrument No. 20033486 of Official Records.

   The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

13. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust, December 30, 2003, as Instrument No. 17552611 of Official Records.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 49 of 74

14. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,850,000.00 |
| Dated: | March 26, 2004 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | April 1, 2004, as Instrument No. 17692548 of Official Records |
| Loan No.: | 50950 |

An additional advance in the amount of $2,200,000.00 as disclosed by the instrument recorded October 18, 2004, as Instrument No. 18050893 of Official Records.

In connection with the above additional advance an Assignment of Memorandum of Further Advance, to Lohrey Acquisition Fund LLC recorded December 26, 2008, as Instrument No. 20078064 of Official Records

An additional advance in the amount of $1,100,000.00 as disclosed by the instrument recorded December 10, 2004, as Instrument No. 18141549 of Official Records.

In connection with the above additional advance an Assignment of Memorandum of Further Advance, to Lohrey Acquisition Fund LLC recorded December 26, 2008, as Instrument No. 20078065 of Official Records

The above instrument has been subordinated to Deed of Trust recorded April 28, 2005, as Instrument No. 18344131 of Official Records by that certain agreement recorded April 28, 2005, as Instrument No. 18344128 of Official Records.

The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

15. Absolute Assignment of Rents and Leases to William C. Owens, Trustee of the Owens Trust, recorded April 1, 2004, as Instrument No. 17692549 of Official Records.

In connection with the above an Partial Assignment of Absolute Assignment of Rents & Leases, to Lohrey Acquisition Fund LLC as to an undivided $2,200,000.00/$5,150,000.00 interest recorded December 26, 2008, as Instrument No. 20078068 of Official Records

In connection with the above an Partial Assignment of Absolute Assignment of Rents & Leases, to Lohrey Acquisition Fund LLC as to an undivided $1,100,000.00/$5,150,000.00 interest recorded December 26, 2008, as Instrument No. 20078069 of Official Records

16. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, Trustee of the Owens Trust recorded April 1, 2004, as Instrument No. 17692550, of Official Records.

17. Junior Mortgage to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $none shown |
| Dated: | May 28, 2004 |
| Trustor: | Lohrey Investments LLC |

File Number: 261418

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 50 of 74

|  |  |
|---|---|
| Beneficiary: | IFC Credit Corporation |
| Recorded: | August 5, 2004, as Instrument No. 17935451 of Official Records |
| Loan No.: | none shown |

The above instrument has been subordinated to Deed of Trust recorded April 28, 2005, as Instrument No. 18344131 of Official Records by that certain agreement recorded April 28, 2005, as Instrument No. 18344133 of Official Records.

18. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, Trustee of the Owens Trust recorded October 18, 2004, as Instrument No. 18050894, of Official Records.

An amendment to said financing statement was recorded December 26, 2008, as Instrument No. 20078072 of Official Records.

19. Notice of Building and/or Housing Code Violation

|  |  |
|---|---|
| Against: | Lohrey Investments, LLC |
| Recorded: | December 10, 2004, as Instrument No. 18140503 of Official Records |
| Address: | City of Gilroy |
|  | Code Enforcement Officer |
|  | 7351 Rosanna Street |
|  | Gilroy Ca 95020 |
| Telephone: | (408) 846-0264 |

20. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, Trustee of the Owens Trust recorded December 10, 2004, as Instrument No. 18141550, of Official Records.

An amendment to said financing statement was recorded December 26, 2008, as Instrument No. 20078073 of Official Records.

21. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

|  |  |
|---|---|
| Amount: | $2,100,000.00 |
| Dated: | December 9, 2004 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | December 22, 2004, as Instrument No. 18158175 of Official Records |
| Loan No.: | 50950 |

The beneficial interest in said deed of trust was assigned of record by assignment:

|  |  |
|---|---|
| To: | Lohrey Acquisition Fund, LLC |
| Recorded: | December 26, 2008, as Instrument No. 20078062 of Official Records |

The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

The beneficial interest in said deed of trust was assigned of record by assignment:

|  |  |
|---|---|
| To: | Investors Yield Inc., a California corporation |
| Recorded: | December 26, 2008, as Instrument No. 20078062 of Official Records |

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 51 of 74

22. Absolute Assignment of Rents and Leases to William C. Owens, Trustee of the Owens Trust, recorded December 22, 2004, as Instrument No. 18158176 of Official Records

   In connection with the above an Assignment of Absolute Assignment of Rents & Leases, to Lohrey Acquisition Fund LLC recorded December 26, 2008, as Instrument No. 20078066 of Official Records

23. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, Trustee of the Owens Trust recorded December 22, 2004, as Instrument No. 18158177, of Official Records.

   An amendment to said financing statement was recorded December 26, 2008, as Instrument No. 20078070 of Official Records.

24. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,200,000.00 |
| Dated: | March 30, 2005 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | April 28, 2005, as Instrument No. 18344131 of Official Records |
| Loan No.: | 51018 |

   A Partial beneficial interest in said deed of trust was assigned of record by assignment:

| | |
|---|---|
| To: | Lohrey Acquisition LLC as to an undivided $200,000.00/$1,200,000.00 portion |
| Recorded: | December 26, 2008, as Instrument No. 20078063 of Official Records |

   The beneficial interest in said deed of trust was assigned of record by assignment:

| | |
|---|---|
| To: | Lohrey Acquisition LLC |
| Recorded: | December 26, 2008, as Instrument No. 200780673 of Official Records |

   The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026229 of Official Records.

25. Absolute Assignment of Rents and Leases to William C. Owens, Trustee of the Owens Trust, recorded April 28, 2005, as Instrument No. 18344132 of Official Records

   In connection with the above an Assignment of Absolute Assignment of Rents & Leases, to Lohrey Acquisition Fund LLC recorded December 26, 2008, as Instrument No. 20078067 of Official Records

26. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, Trustee of the Owens Trust recorded April 28, 2005, as Instrument No. 18344134 of Official Records.

   An amendment to said financing statement was recorded December 26, 2008, as Instrument No. 20078071 of Official Records.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 52 of 74

27. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $16,000.00 |
| Dated: | July 19, 2006 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Chicago Title Company |
| Beneficiary: | Vestin Mortgage Inc |
| Recorded: | July 19, 2006, as Instrument No. 19025440 of Official Records |
| Loan No.: | 1142-06-06 |

The beneficial interest in said deed of trust was partially assigned of record by partial assignment:

| | |
|---|---|
| Assignor: | Vestin Mortgage Inc |
| Assignee: | Vestin Realty Mortgage I, Inc as to an undivided 3,000,000/16,000,000th interest |
| | Vestin Realty II, Inc as to an undivided 1,600,000/16,000,000th interest |
| | Vestin Fund II, LLC as to an undivided 1,400,000/16,000,000th interest |
| Recorded: | August 18, 2006, as Instrument No. 19067159 of Official Records |

A Notice of default recorded August 25, 2008, as Instrument No. 19964175 of Official Records.

A Notice of Trustee's Sale recorded December 16, 2008, as Instrument No. 20069618 of Official Records.

28. Terms and provisions of a lease executed by Lohrey Investments Inc, as lessor, and Lohrey Enterprises, Inc, as lessee as disclosed by an instrument recorded July 19, 2006, as Instrument No. 19025441 of Official Records.

The above instrument has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19025441 of Official Records.

The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

29. Financing Statement executed by Lohrey Investments, LLC to Vestin Mortgage Inc recorded July 19, 2006, as Instrument No. 19025442 of Official Records.

30. Terms and provisions of a lease as disclosed by an instrument recorded July 19, 2006, as Instrument No. 19026230 of Official Records.

The above Leases has been subordinated to Deed of Trust recorded July 19, 2006, as Instrument No. 19025440 of Official Records by that certain agreement recorded July 19, 2006, as Instrument No. 19026230 of Official Records.

The present ownership of the leasehold created by said lease and other matters affecting the interest of the lessee are not shown herein.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 53 of 74

31. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,000,000.00 |
| Dated: | April 18, 2007 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | April 25, 2007, as Instrument No. 19400289 of Official Records |
| Loan No.: | 51133 |

32. Absolute Assignment of Rents and Leases, recorded April 25, 2007, as Instrument No. 19400290 of Official Records

33. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust recorded April 25, 2007, as Instrument No. 19400291 of Official Records.

34. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,000,000.00 |
| Dated: | August 24, 2007 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | September 20, 2007, as Instrument No. 19592138 of Official Records |
| Loan No.: | 51147 |

35. Absolute Assignment of Rents and Leases, recorded September 20, 2007, as Instrument No. 19592139 of Official Records

36. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust September 20, 2007, as Instrument No. 19592140 of Official Records.

37. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $1,357,000.00 |
| Dated: | November 12, 2007 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | November 20, 2007, as Instrument No. 19658420 of Official Records |
| Loan No.: | 51151 |

38. Absolute Assignment of Rents and Leases, recorded November 20, 2007, as Instrument No. 19658421 of Official Records

39. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust November 20, 2007, as Instrument No. 19658422 of Official Records.

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 54 of 74

40. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $800,000.00 |
| Dated: | December 3, 2007 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | December 17, 2007, as Instrument No. 19684719 of Official Records |
| Loan No.: | 51156 |

41. Absolute Assignment of Rents and Leases, recorded December 17, 2007, as Instrument No. 19684720 of Official Records

42. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust December 17, 2007, as Instrument No. 19684721 of Official Records.

43. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $600,000.00 |
| Dated: | January 18, 2008 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | February 4, 2008, as Instrument No. 19732009 of Official Records |
| Loan No.: | 51165 |

44. Absolute Assignment of Rents and Leases, recorded February 4, 2008, as Instrument No. 19732010 of Official Records

45. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust February 4, 2008, as Instrument No. 19732011 of Official Records.

46. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $500,000.00 |
| Dated: | March 17, 2008 |
| Trustor: | Lohrey Investments LLC |
| Trustee: | Investors Yield, Inc., a California corporation |
| Beneficiary: | William C. Owens, trustee of the Owens Trust |
| Recorded: | March 24, 2008, as Instrument No. 19787936 of Official Records |
| Loan No.: | 51170 |

47. Absolute Assignment of Rents and Leases, recorded March 24, 2008, as Instrument No. 19787937 of Official Records

48. Financing Statement executed by Lohrey Investments, LLC to William C. Owens, trustee of the Owens Trust March 24, 2008, as Instrument No. 19787938 of Official Records.

49. This Company will require the following documents in order to insure a conveyance or encumbrance by the limited liability company named below:

Limited liability company:      Lohrey Investments LLC

(a) A certified copy of the articles of organization (LLC-1), and any amendment (LLC-2) or restatement (LLC-10) to be recorded in the appropriate county.

(b) A copy of the operating agreement and any amendment.

(c) Other requirements that the Company may set forth following its review of said documents.

50. Any and all unrecorded leases.

51. Any facts, rights, interests or claims which are not disclosed by the public records but which could be ascertained by making inquiry of the parties in possession of the herein described land.

52. Any easements, liens (including but not limited to any Statutory Liens for labor or materials arising from any on-going or recently completed works of improvement), encumbrances, facts, rights, interest or claims which are not shown by the public records but which could be ascertained by an inspection of the herein described land.

53. Discrepancies, conflicts in boundary lines, shortages in area, encroachments or any other facts which a correct survey of the herein described land would disclose which are not shown by the public records and the requirement that said survey meets with the minimum standards for ALTA/ACSM Land title surveys.

If ALTA Survey is obtained, said ALTA survey needs to be certified to both Stewart Title of California, Inc. and to Stewart Title Guaranty Company, our Underwriter

(End of Exceptions)

# NOTES AND REQUIREMENTS

According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report.

This report is preparatory to the issuance of an ALTA loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA Endorsement Forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA Endorsement Form 116 or 116.2, if applicable will reference a(n) Commercial/Industrial, 8190 Murray Avenue, Gilroy, CA

The charge for a policy of title insurance, when issued through this title order, will be based on the Basic Rate

The map attached, if any, may or may not be a survey of the land depicted hereon. Stewart Title expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

A Preliminary Change of Ownership Report must be completed by the transferee (buyer) prior to the transfer of property in accordance with the provisions of Section 480.3 of the Revenue and Taxation Code. The Preliminary Change of Ownership Report should be submitted to the recorder concurrent with the recordation of any document effecting a change of ownership. If a document evidencing a change of ownership (i.e. Deed, Affidavit-Death Joint Tenant) is presented to the recorder for recording without a preliminary change of ownership report, the recorder may charge an additional $20.00

If your property is in San Francisco, it is the requirement of the City and County of San Francisco that a Transfer Tax affidavit to be completed and signed by the Grantor for each deed submitted for recording. This is an addition to a Preliminary Change of Ownership Report.

In addition to County Transfer Tax, any conveyance of the herein described property may be subject to a City Transfer and/or Conveyance Tax, as follows.

| | |
|---|---|
| Alameda | $12.00 per thousand |
| Albany | $11.50 per thousand |
| Berkeley | $15.00 per thousand |
| Cloverdale | $1.10 per thousand |
| Cotati | $1.90 per thousand |
| Culver City | $4.50 per thousand |
| Hayward | $4.50 per thousand |
| Los Angeles | $4.50 per thousand |
| Mountain View | $3.30 per thousand |
| Oakland | $15.00 per thousand |
| Palo Alto | $3.30 per thousand |
| Petaluma | $2.00 per thousand |
| Piedmont | $13.00 per thousand |
| Pomona | $2.20 per thousand |

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 57 of 74

| | |
|---|---|
| Redondo Beach | $2.20 per thousand |
| Richmond | $7.00 per thousand |
| Riverside | $1.10 per thousand |
| Sacramento | $2.75 per thousand |
| San Leandro | $6.00 per thousand |
| City and County of San Francisco | $100 to $250,000 = $5.00 per thousand<br>$250,000 to $1,000,000 = $6.80 per thousand<br>$1,000,000 or more = $7.50 per thousand<br>$5,000,000 or more = $15.00 per thousand<br>(Do not add the additional $1.10 for County Tax, it is included.) |
| San Jose | $3.30 per thousand |
| San Mateo | $5.00 per thousand |
| San Rafael | $2.00 per thousand |
| Santa Monica | $3.00 per thousand |
| Santa Rosa | $2.00 per thousand |
| Sebastopol | $2.00 per thousand |
| Vallejo | $3.30 per thousand |
| Waterford | $0.55 per thousand |
| Winters | $1.10 per thousand |
| Woodland | $1.10 per thousand |

Additional Requirements for "Short Sale" Transactions in which a lender will accept less than the outstanding balance of its loan as full satisfaction of the obligation:

The Company will require, prior to the issuance of a policy of title insurance, evidence that the first-position trust deed holder has received and acknowledged all payments to be made to subordinate-position lien holders, regardless of whether such payments are to be made from proceeds or from contributions by real estate brokers and/or buyers in the subject transaction, or from other third-party sources. Evidence shall include but not be limited to: (a) a written demand from the first-position trust deed holder acknowledging and approving payments to subordinate-position lien holders from proceeds and otherwise; or (b) a supplemental letter or amended demand from the first-position lien holder acknowledging payments to be made to subordinate lien holders from sources other than proceeds (including broker commissions and additional buyer deposits).

File Number: 261418

# CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds received by Stewart Title of California, Inc. via wire transfer may be disbursed upon receipt. Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit. If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer. All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by Stewart Title of California, Inc.. Stewart Title of California, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Stewart Title of California, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by Stewart Title of California, Inc.. Such benefits shall be deemed additional compensation to Stewart Title of California, Inc. for its services in connection with the escrow or sub-escrow.

If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

## Wire Instructions

**Please find below Wiring Instructions for Escrow # 261418**

    **Effective**        **November 2, 2009**
**All funds wired should be directed to:**

| | |
|---|---|
| **Bank** | **Comerica Bank** |
| **Address** | **2 Embarcadero Center, Suite 300** |
| **City/State** | **San Francisco, CA  94111** |
| **ABA** | **121137522** |
| **Credit To** | **Stewart Title of California, Inc.** |
| **Account No.** | **1894096591** |
| **Reference** | **Escrow Officer - Jackie Boccabella** |
| | **Escrow Number - 261418** |
| | **Escrow Unit No. - 4622** |

**If you have any questions regarding this matter, please do not hesitate to contact this office.**

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 59 of 74

## WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** | Yes | No |
| **For nonaffiliates to market to you.** Nonaffiliates are companies not related by common ownership or control. They can be financial and nonfinancial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to nonaffiliates as permitted by law. If you request a transaction with a nonaffiliate, such as a third party insurance company, we will disclose your personal information to that nonaffiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

| Sharing practices | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

| Contact Us | If you have any questions about this privacy notice, please contact us at: Stewart Title Guaranty Company, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056 |
|---|---|

File No.: 261418



Description: Santa Clara,CA Assessor Map 841.59 Page: 1 of 1
Order: 3 Comment:

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 61 of 74



Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 63 of 74

# TRACT No. 8335

CONSISTING OF TWO (2) SHEETS

BEING ALL OF THE LOT 1 OF TRACT NO. 6274 RECORDED IN BOOK
608 OF MAPS, AT PAGES 16-33 SANTA CLARA COUNTY RECORDS.
LYING WITHIN THE CITY OF SAN JOSE

SAN JOSE,                        CALIFORNIA

FEB. 1990

**NOLTE and ASSOCIATES**

SAN JOSE   SAN DIEGO   SACRAMENTO   WALNUT CREEK

P189-12-127

BK 612 PAGES 31-32 FILE # 10472871

## OWNER'S STATEMENT

WE HEREBY STATE THAT WE ARE THE OWNERS OF, OR HAVE SOME RIGHT, TITLE OR
INTEREST IN AND TO THE REAL PROPERTY INCLUDED WITHIN THE SUBDIVISION SHOWN
WITHIN THE DISTINCTIVE BORDER ON THIS MAP, THAT WE ARE THE ONLY PERSONS
WHOSE CONSENTS ARE NECESSARY TO PASS CLEAR TITLE TO SAID PROPERTY, AND WE
HEREBY CONSENT TO THE MAKING OF SAID SUBDIVISION.

SHEA RIVER OAKS ASSOCIATES
A CALIFORNIA GENERAL PARTNERSHIP.

BY: J. F. SHEA CO., INC.
A NEVADA CORPORATION, PARTNER
ITS MANAGING GENERAL PARTNER

BY: _____
Vice President

BY: _____
Assist. Secretary

## ENGINEER'S STATEMENT

I, ROBERT L. BAKER HEREBY STATE THAT I AM A REGISTERED CIVIL ENGINEER OF
THE STATE OF CALIFORNIA; THAT THIS MAP, CONSISTING OF 2 SHEETS CORRECTLY
REPRESENTS A SURVEY MADE UNDER MY SUPERVISION ON AUGUST 1, 1989, AT THE
REQUEST OF SHEA RIVER OAKS INC., THAT THE SURVEY IS TRUE AND COMPLETE AS SHOWN;
THAT ALL MONUMENTS EXIST AS SHOWN OR WILL BE PLACED OR OF RECORD. THE
MONUMENTS ARE SUFFICIENT TO ENABLE THE SURVEY TO BE RETRACED.

DATE: 3/15/90        SIGNATURE _____

## SOILS AND GEOLOGICAL REPORT

A SOILS REPORT AND/OR GEOTECHNICAL REPORT ON THIS PROPERTY HAS BEEN PREPARED
BY KLEINFELDER DATED JULY 18, 1988, A COPY OF WHICH WAS BEEN FILED IN THE
OFFICE OF THE CITY CLERK OF THE CITY OF SAN JOSE.

## ACKNOWLEDGMENT

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA

ON THIS _____ DAY OF MARCH 1990, BEFORE ME, THE
UNDERSIGNED, A NOTARY PUBLIC IN AND FOR SAID STATE, PERSONALLY APPEARED
_____, VICE PRESIDENT AND
_____, ASSISTANT SECRETARY OF THE CORPORATION THAT
EXECUTED THE WITHIN INSTRUMENT AND KNOWN TO ME TO BE THE PERSONS AND
CORPORATION BEING KNOWN TO ME TO BE OF SAID CORPORATION, SAID
CORPORATION BEING KNOWN TO ME TO BE ONE OF THE PARTNERS OF _____,
A PARTNERSHIP, THE PARTNERSHIP THAT EXECUTED THE
WITHIN INSTRUMENT, AND ACKNOWLEDGED TO ME THAT SUCH CORPORATION EXECUTED THE
SAME AS SUCH PARTNER AND THAT SAID PARTNERSHIP EXECUTED THE SAME.

WITNESS BY HAND THE DAY AND YEAR FIRST HEREINABOVE WRITTEN.

_____
NOTARY PUBLIC, IN AND FOR THE COUNTY
OF SANTA CLARA, STATE OF CALIFORNIA
MY COMMISSION EXPIRES: 6-8-91

## CITY ENGINEER'S STATEMENT

I HEREBY STATE THAT I HAVE EXAMINED THE HEREON FINAL MAP OF TRACT NO.
8335; THAT THE SUBDIVISION AS SHOWN HEREON IS SUBSTANTIALLY THE SAME AS IT
APPEARED ON THE TENTATIVE MAP AND ANY APPROVED ALTERATIONS THEREOF; THAT
ALL PROVISIONS OF THE SUBDIVISION MAP ACT, AS AMENDED, AND OF ANY LOCAL
ORDINANCE APPLICABLE AT THE TIME OF APPROVAL OF THE TENTATIVE MAP HAVE
BEEN COMPLIED WITH AND I AM SATISFIED THAT SAID MAP IS TECHNICALLY
CORRECT.

RALPH A. QUALLS, JR. RCE #22996
CITY ENGINEER OF THE CITY OF
SAN JOSE, CALIFORNIA
RCE EXPIRES 9/30/93

DATE: 3·16·90        BY: _____

## CITY CLERK'S STATEMENT

I HEREBY STATE THAT THIS MAP, DESIGNATED AS TRACT NO. 8335, CONSISTING OF 2
SHEETS WAS APPROVED BY THE CITY COUNCIL OF THE CITY OF SAN JOSE AT A
MEETING HELD ON THE _____ DAY OF _____, 19__; AND THAT AT SAID TIME SAID COUNCIL DID ACCEPT THE DEDICATION OF ALL STREETS
AND EASEMENTS THEREOF AND ALL EASEMENTS OFFERED FOR DEDICATION AS SHOWN ON
SAID MAP WITHIN SAID SUBDIVISION.

HENRY GHEZZI, CITY CLERK AND EX-OFFICIO CLERK OF
THE CITY COUNCIL OF THE CITY OF SAN JOSE, CALIFORNIA

BY: _____
DEPUTY

DATE: _____

## APPROVAL BY THE DIRECTOR OF PLANNING

I CERTIFY THAT THIS FINAL MAP HAS BEEN CHECKED AND COMPLIES WITH THE
TENTATIVE MAP AND ITS CONDITIONS AS APPROVED ON THE _____ DAY OF
_____, 19__.

GARY J. SCHOENNAUER
DIRECTOR OF PLANNING OF THE
CITY OF SAN JOSE, CALIFORNIA

BY: _____

DATE: _____

## RECORDER'S STATEMENT

FILE NO. 1047 2871
ACCEPTED AND FILED IN BOOK 612 OF MAPS, AT
AND PAGES 31-32 SANTA CLARA COUNTY RECORDS, THIS _____ DAY OF _____
19___ AT _____ AT THE REQUEST OF NOLTE AND ASSOCIATES.

FEE $ _____ PAID
BY _____ OF _____
NO. OF MAPS 31 PAGES

LAURIE KANE, RECORDER
SANTA CLARA COUNTY, CALIFORNIA

BY: _____
DEPUTY

SHEET 1 OF 2   JOB # 189-88-31



PARCEL MAP

IN THE CITY OF GILROY

SANTA CLARA COUNTY, CALIFORNIA

LOT 37 MERGER

OF PARCEL "B", BOOK 481 O.M., PAGE 13 AND
PARCELS 2 & 3, BOOK 401 O.M., PAGE 56
AND ALL OF PARCEL 1, 1753 O.R. 212

JANUARY 1990                SCALE: 1" = 100'

HANNA & BRUNETTI - CIVIL ENGINEERS & SURVEYORS - GILROY, CALIF.

JOB NO. 90007

Stewart Title Guaranty Company

## EXHIBIT A (Revised 11-17-04)

## CLTA PRELIMINARY REPORT FORM (Revised 11-17-06)

### SCHEDULE B

### CLTA PRELIMINARY REPORT FORM
### LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

(a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

(c) resulting in no loss or damage to the insured claimant;

(d) attaching or created subsequent to Date of Policy; or

(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

Rev. 11-7-04

4.      Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.      (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, costs, attorneys' fees, or expenses, which arise by reason of:

## CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10/22/03)
## ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1.      Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
        a. building
        b. zoning
        c. Land use
        d. improvements on the Land
        e. Land division
        f. environmental protection
This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.
2.      The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.
3.      The right to take the Land by condemning it, unless:
        a. a notice of exercising the right appears in the Public Records at the Policy Date; or
        b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.
4.      Risks:
        a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
        b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
        c. that result in no loss to You; or
        d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.
5.      Failure to pay value for Your Title.
6.      Lack of a right:
        a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
        b. in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
*       For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar |
|---|---|---|
| | | Limit of Liability |
| Covered Risk 14: | 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 15: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 16: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 18: | 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

## AMERICAN LAND TITLE ASSOCIATION
## RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

Rev. 11-7-04

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 66 of 74

1.      Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
- land use
- improvements on the land
- land division
- environmental protection

This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

2.      The right to take the land by condemning it, unless:
- a notice of exercising the right appears in the public records
- on the Policy Date
- the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking

3.      Title Risks:
- that are created, allowed, or agreed to by you
- that are known to you, but not to us, on the Policy Date -- unless they appeared in the public records
- that result in no loss to you
- that first affect your title after the Policy Date -- this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4.      Failure to pay value for your title.

5.      Lack of a right:
- to any land outside the area specifically described and referred to in Item 3 of Schedule A

OR
- in streets, alleys, or waterways that touch your land

This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92)
## WITH ALTA ENDORSEMENT - FORM 1 COVERAGE

The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, costs, attorney's fees or expenses which arise by reason of:

1.      (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.

2.      Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at date of policy, but not excluding from coverage any taking which has occurred prior to date of policy which would be binding on the rights of a purchaser for value without knowledge.

3.      Defects, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant;
(b) Not known to the company, not recorded in the public records at date of policy, but known to the insured claimant and not disclosed in writing to the company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to date of policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or to the extent insurance is afforded herein as to the assessments for street improvements under construction or completed at date of policy); or
(e) resulting in loss or damage, which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4.      Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at date of policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5.      Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.      Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to date of policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at date of policy the insured has advanced or is obligated to advance.

Rev. 11-7-04

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 67 of 74

7.  Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

    I. The transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

    II. The subordination of the interest of the insured mortgagee as a result of the application of the doctrine or equitable subordination; or

    III. The transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

        (a) to timely recorded the instrument of transfer; or

        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

The above policy forms may be issued to afford either standard coverage or extended coverage. In addition to the above exclusions from coverage, the exceptions from coverage in a standard coverage policy will include the following General Exceptions:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

Rev. 11-7-04

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 68 of 74

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (10-17-92)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the company will not pay loss or damage, cost, attorneys' fees or expenses, which arise by reason of:

1.    (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy. (B) any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at date of policy.

2.    Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at date of policy, but not excluding from coverage any taking which has occurred prior to date of policy which would be binding on the rights of a purchaser for value without knowledge.

3.    Defects, liens, encumbrances, adverse claims or other matters:

(A) Created, suffered, assumed or agreed to by the insured claimant;

(B) Not known to the company, not recorded in the public records at date of policy, but known to the insured claimant and not disclosed in writing to the company by the insured claimant prior to the date the insured claimant became an insured under this policy;

(C) Resulting in no loss or damage to the insured claimant;

(D) Attaching or created subsequent to date of policy; or

(E) Resulting in loss or damage, which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4.    Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors rights laws, that is based on:

I.    The transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or

II.    The transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:

(A) To timely record the instrument of transfer; or

(B) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

The above policy forms may be issued to afford either standard coverage or extended coverage. In addition to the above exclusions from coverage, the exceptions from coverage in a standard coverage policy will include the following general exceptions:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.    Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.

3.    Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.    (a) unpatented mining claims; (b) reservations or exceptions in patents or in acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## 2006 ALTA OWNER'S POLICY (06-17-06)

Rev. 11-7-04

Case: 09-10007    Doc# 81    Filed: 03/16/10    Entered: 03/16/10 15:43:09    Page 69 of 74

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.      (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i)     the occupancy, use, or enjoyment of the Land;

      (ii)    the character, dimensions, or location of any improvement erected on the Land;

      (iii)   the subdivision of land; or

      (iv)   environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.      Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.      Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.      Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.      Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1.      (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or areas of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that s notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.

2.      Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.

3.      Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting In no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26); or

(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.      Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.

5.      Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.

6.      Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.

Rev. 11-7-04

7.         Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This exclusion does not limit the coverage provided in Covered Risk 8.

8.         Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:

(a) The time of the advance; or

(b) The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of Interest is greater as a result of the modification than it would have been before the modification. This exclusion does not limit the coverage provided in Covered Risk 8.

9.         The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

Rev. 11-7-04

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California County of Santa Clara, City of Gilroy, and described as follows:

Parcel 1, as shown on that certain Map entitled, "Parcel Map", which Map was filed for record in the Office of the Recorder of the County of Santa Clara, State of California, on April 10, 1990, in Book 612, of Maps, at Page 40.

APN: 841-59-022

ARB: 841-01-095.02.01;
841-01-095.03;
841-01-095.01;
841-01-099.01

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:     November 2, 2009

To :     _____

Property:     8190 Murray Avenue
Gilroy, California

From:     Stewart Title of California, Inc.

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA – Stewart Specialty Insurance Services, LLC ("Stewart Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California. Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| *Stewart Insurance Settlement Service* | *Charge or range of charges* |
|---|---|
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $ 780.00 |
| Natural Hazard Disclosure Report | $ 42.50 to     149.50 |

ACKNOWLEDGMENT

I/we have read this disclosure form, and understand that Stewart Title is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

_____
Signature

_____
Signature

Order Number: 1362-261418 - ABA Disclosure Title

Case: 09-10007   Doc# 81   Filed: 03/16/10   Entered: 03/16/10 15:43:09   Page 73 of 74

**Order No.** 261418

# AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

Order Number: 261418
Available Discounts Disclosure Statement