## ASSET PURCHASE AGREEMENT

by and between

**RICHARD SCHWALBE, as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey
Enterprises, Inc., d/b/a West Coast Linen,**

as "Seller"

and

**ANGELICA TEXTILE SERVICES, INC.,**

as "Buyer"

Dated as of August 3, 2009

EXHIBIT "A"

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement"), dated as of August 3, 2009, is hereby entered into by and between Angelica Textile Services, Inc. ("Buyer"), and Richard Schwalbe, as Chapter 7 Trustee of the Bankruptcy Estate of Lohrey Enterprises, Inc., d/b/a West Coast Linen ("Seller").

## RECITALS:

A.     On October 17, 2008 ("Petition Date"), Lohrey Enterprises, Inc., doing business as West Coast Linen ("WCL" or "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), case no. 08-12066 AJ (the "WCL Bankruptcy Case").

B.     On November 7, 2008, Richard Schwalbe ("Schwalbe") was appointed Chapter 11 Trustee in the WCL Bankruptcy Case. On November 21, 2008, the WCL Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, with Schwalbe as the Chapter 7 Trustee (Schwalbe in his capacity as Chapter 7 Trustee is referred to hereinafter as the "Trustee").

C.     Prior to the Petition Date, Podium Financial Group, Inc. ("Podium") and WCL executed an Equipment Lease Agreement dated June 6, 2008 (the "Podium Lease"), under which 1 Podium, as Lessor, purchased certain assets from WCL, as listed on Exhibit A, hereto (the "WCL Equipment"), and leased them back to WCL, as Lessee. Podium contends that it has title to the WCL Equipment and has the unilateral right to sell the WCL Equipment to a third party. The Trustee contends that the Podium Lease is a disguised financing arrangement and that the WCL Equipment is property of the WCL bankruptcy estate. The Bankruptcy Court has set a hearing on January 16, 2009, on Podium's motion to compel assumption or rejection of the Podium Lease, at which ownership of the WCL Equipment will be litigated.

D.     Subject to a determination by Final Order that Seller holds title to the WCL Equipment, Buyer desires to purchase from Seller, and Seller desires to sell, convey, assign, and transfer to Buyer, the WCL Equipment pursuant to the terms and conditions of this Agreement; and

E.     In the event of such sale, the WCL Equipment will be sold pursuant to the terms of this Agreement and an order of the Bankruptcy Court approving such sale under Section 363 of the Bankruptcy Code.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and promises contained herein, and for other good and valuable consideration,

2

the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

# ARTICLE I

# DEFINITIONS

1.1    **Defined Terms**. As used herein, unless the context requires otherwise, terms defined in the body of this Agreement shall have the meaning so defined. In addition, the terms below shall have the following meanings:

(a)    "Assets" shall mean all of Seller's right, title and interest in and to the WCL Equipment listed on Exhibit A hereto.

(b)    "Dollars" shall refer to currency of the United States of America.

(c)    "Final Order" shall mean an order of the Bankruptcy Court, or other court of competent jurisdiction, that is final for purposes of appeal, as to which the time for appeal, including any extensions, has expired, and from which no appeal has been taken;

(d)    "Sale Approval Order" shall mean an order of the Bankruptcy Court containing a finding of good faith pursuant to 363(m), reasonably satisfactory in form and substance to Buyer, Seller and their respective counsel, entered after a hearing conducted with adequate notice given relating to the sale of the Assets and the assumption and assignment of the Assumed Executory Contracts.

# ARTICLE II

# PURCHASE AND SALE AGREEMENT

2.1    **Transfer of Assets**. Upon the terms and subject to the conditions and provisions contained herein, at the Closing (defined below), Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall acquire and accept from Seller, the Assets free and clear of all liens, claims and encumbrances.

2.2    **Purchase Price**. For the sale, transfer, assignment, conveyance and delivery of the Assets and upon the terms and subject to the conditions set forth herein, Buyer shall pay to Seller the sum of Eight Hundred Fifty Thousand Dollars ($850,000.00) (the "Purchase Price") in the following manner: (i) within three (3) business days following the date of full execution of this Agreement, a fully refundable earnest money deposit (the "Earnest Money") in the sum of One Hundred Fifty Thousand Dollars ($150,000) cash, to be segregated and held by Seller pending full performance of this Agreement; and (ii) at the Closing, the sum of Seven Hundred Thousand Dollars ($700,000) cash.

3

2.3    **Bankruptcy Court Approval**. Promptly upon full execution of this Agreement, Seller shall make application to the Bankruptcy Court, in a form reasonably acceptable to Buyer, for an order pursuant to 11 U.S.C. §363 approving this Agreement and the sale contemplated hereby free and clear of any interest in the Assets.

## ARTICLE III

## CLOSING

3.1    **Closing**. Upon the terms and conditions set forth herein and in the Sale Approval Order, the closing of the transaction contemplated herein (the "Closing") shall be held at 10:00 a.m. at _____ on September 15, 2009, or such other location and date as may be mutually agreeable to Buyer and Seller. The date on which the Closing occurs in accordance with the previous sentence is referred to as the "Closing Date."

3.2    **Conveyances at Closing**. At the Closing, and in connection with effecting and consummating the Closing, including, without limitation, the sale and purchase of the Assets and the delivery of the Purchase Price, Seller and Buyer shall, on the Closing Date, deliver (or cause to be delivered) the following:

(a)    **Instruments and Possession**. Seller shall deliver to Buyer:

(i)    one or more bills of sale conveying all of the Assets;

(ii)    a certified copy of the Sale Approval Order; and

(iii)    physical possession of the Assets, including, if necessary, unrestricted access to the Assets for the purposes of de-installation and removal, as set forth in Section 3.5, below.

(b)    **Additional Instruments**. After the Closing Date, Seller shall deliver to Buyer such other instruments as shall be reasonably requested by Buyer to vest in Buyer title in and to the Assets in accordance with the provisions hereof.

(c)    **Purchase Price**. Buyer shall cause delivery of the Purchase Price less any earnest money previously deposited with Seller.

3.3    **Seller to Hold Funds Pending Full Performance**. Until Buyer has been given access to, de-installed, and removed the Assets as provided in section 3.5 herein, or until such earlier time as Buyer agrees, Seller shall continue to hold, and shall not disburse, the Purchase Price. Buyer shall promptly certify to Seller the completion of Buyer's de-installation and removal of the Assets.

4

3.4 **Transaction Expenses**. Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

3.5 **Access, De-installation and Removal of Assets**. The parties acknowledge that the Assets include equipment on premises owned by a third party, some of which will require de-installation prior to removal. Commencing on the Closing Date, or such other date as the parties may hereafter agree, Seller agrees to provide Buyer with unrestricted access to the Assets for the purposes of de-installation and removal of the Assets, for such period of time, not to exceed ninety (90) days, as is reasonably necessary for Buyer to complete the de-installation and removal of the Assets. Seller shall be solely responsible for providing such access to Buyer, and Seller's failure to provide access as set forth herein shall be a material breach of this Agreement, which, without limiting Buyer's rights at law or equity, shall entitle Buyer to immediately rescind this Agreement and receive a full refund of all monies paid to Seller hereunder.

3.6 **Other Closing Matters**. Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article IV are correct and complete as of the date of this Agreement, subject to the entry of the Sale Approval Order by the Bankruptcy Court.

4.1 **Authorization of Seller**. Seller is the duly appointed and qualified Chapter 7 Trustee of the WCL Bankruptcy Estate. This Agreement has been duly executed and delivered by Seller and is a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity).

4.2 **Assets**. Seller has (or will have as of the Closing pursuant to Sections 363(b) and (f) of the Bankruptcy Code) good title to the Assets, free and clear of all liens, claims and encumbrances.

4.3 **Disclaimer of other Representations and Warranties**. Except as expressly set forth in this Article IV , Seller makes no representation or warranty, express or implied, at law or in equity, in respect of any of its assets (including, without limitation, the Assets), liabilities or operations, including, without limitation, with respect to merchantability or fitness for any particular purpose,

5

and any such other representations or warranties are hereby expressly disclaimed. Buyer hereby acknowledges and agrees that, except to the extent specifically set forth in this Article IV, Buyer is purchasing the Assets on an "as-is, where-is" basis, at the WCL facility in Gilroy, California. Without limiting the generality of the foregoing, Seller makes no representation or warranty regarding any assets other than the Assets, and none shall be implied at law or in equity.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article V are correct and complete as of the date of this Agreement.

5.1 **Organization of Buyer**. Buyer is duly organized, validly existing and in good standing under the laws of the State of its organization.

5.2 **Authorization**. This Agreement has been duly executed and delivered by Buyer and is a valid and binding obligation of Buyer, enforceable against it in accordance with its terms (except to the extent that enforcement may be affected by applicable bankruptcy, reorganization, insolvency and similar laws affecting creditors' rights and remedies and by general principles of equity).

5.3 **Financial Capacity**. Buyer has sufficient financial resources to consummate the transaction contemplated herein.

## ARTICLE VI

## ADDITIONAL COVENANTS

6.1 Seller agrees that from the date hereof through the Closing, Seller shall allow Buyer and its representatives to make such inspection of the Assets as Buyer deems appropriate, and Seller shall promptly, on Buyer's request, provide Buyer with all documents, records and information with respect to the Assets in Seller's custody or control or to which Seller has access.

## ARTICLE VII

## CONDITIONS TO SELLER'S OBLIGATIONS

The obligations of Seller to sell the Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer in accordance with Section 9.5:

6

7.1 **Entry of Sale Approval Order**. The Sale Approval Order shall have been entered by the Bankruptcy Court, and shall not have been stayed by any order of a court with jurisdiction to do so as of the Closing Date.

7.2 **Litigation**. There shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of this transaction contemplated by this Agreement.

7.3 **Covenants and Representations**. Buyer shall have performed in all material respects all agreements and covenants required hereby to be performed by Buyer prior to or at the Closing Date, and the representations and warranties of Buyer made in Article V shall be true and correct in all material respects as of the Closing Date as if made on such date.

## ARTICLE VIII

## CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer to purchase the Assets and to consummate the transactions contemplated hereby are subject to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer in accordance with Section 9.5:

8.1 **Entry of Sale Approval Order**. The Sale Approval Order in a form reasonably acceptable to Buyer shall have been entered by the Bankruptcy Court, shall find that Buyer is a good faith purchaser for purposes of 11 U.S.C. §363(1), and shall not have been stayed by any order of a court with jurisdiction to do so as of the Closing Date. The Sale Approval Order shall authorize the sale of the Assets free and clear of any interest in the Assets of an entity other than the bankruptcy estate.

8.2 **Covenants and Representations**. Seller shall have performed in all material respects all agreements and covenants required hereby to be performed by Seller prior to or at the Closing Date, and the representations and warranties of Seller in Article IV shall be true and correct in all material respects as of the Closing Date as if made on such date, unless such representation or warranty speaks expressly as of a particular date.

8.3 **Litigation**. There shall not be any judgment, decree, injunction, order or ruling in effect preventing the consummation of this transaction contemplated by this Agreement.

8.4 **Instruments of Conveyance, Certificates**. Seller shall have executed and delivered to Buyer all of the documents provided for in Section 3.2.

7

8.5     **Possession of the Assets**. Buyer shall have received physical possession of the Assets and Seller shall have used its reasonable best efforts in furtherance of the foregoing. As set forth in section 3.5, above, for a period not to exceed ninety (90) days following the Closing Date, and with no cost to Buyer, Buyer shall have full and complete access to the WCL facility in Gilroy, California for the purpose of de-installing and removing the Assets

# ARTICLE IX

## MISCELLANEOUS

9.1     **Termination.** This Agreement may be terminated prior to the Closing:

(i)     by mutual written consent executed by both Buyer and Seller (subject to the approval of the Bankruptcy Court) at any time;

(ii)     by Buyer if any event occurs which renders satisfaction of one or more of the conditions to Buyer's obligations set forth in Article VIII impossible;

(iii)     by Seller if any event occurs which renders satisfaction of one or more of the conditions to Seller's obligations set forth in Article VII impossible; or

(iv)     by Buyer if the Sale Approval Order has not been entered by September 15, 2009.

(v)     by Buyer if Buyer submits a bid of Four Million Eight Hundred Fifty Thousand dollars ($4,850,000.00) for the real property located at 8190 Murray Avenue, Gilroy, California, and equipment contained in this Agreement.

9.2     **In the Event of Termination; Remedies**. In the event of termination of this Agreement pursuant to Section 9.1:

(i)     Seller shall immediately refund to Buyer the Earnest Money plus any interest accrued thereon while held by Seller;

(ii)     each party shall redeliver all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same;

(iii)     all obligations of the parties hereto under this Agreement shall terminate and there shall be no liability of any party hereto to any

8

other party and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement; provided that the foregoing shall not relieve any party of liability for damages actually incurred by any other party as a result of any breach of this Agreement resulting from the willful misconduct or reckless or grossly negligent act or omission of the party permitting, causing or committing such breach;

9.3 **Assignment; Successors**. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of all other parties to this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, including without limitation any Chapter 11 or Chapter 7 trustee appointed in the Bankruptcy Case, and no other person shall have any right, benefit or obligation hereunder. Notwithstanding anything to the contrary, Buyer may assign any of its rights under this Agreement to any subsidiary or controlled affiliate of Buyer.

9.4 **Notices**. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by telecopy, upon receipt of telephonic confirmation; the date after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (e.g., Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. In each case notice shall be:

If to Seller, addressed to:          Richard Schwalbe, Chapter 7 Trustee

                                     _____
                                     _____
                                     e-mail: rischwalbe@aol.com
                                     Fax: _____


with a copy to

Attorneys for Seller:                Patricia H. Lyon
                                     French & Lyon
                                     22 Battery Street, Suite 404
                                     San Francisco, CA 94111
                                     e-mail: phlyon@aol.com
                                     Fax: 415-243-8200

9

If to Buyer, addressed to:

John S. Olbrych
Angelica Textile Services, Inc.
1105 Lakewood Parkway, Suite 210
Alpharetta, GA 30009
e-mail: jolbrych@angelica.com
Fax: 678-823-4168

with a copy to

Steven L. Frey
Angelica Corporation
424 South Woods Mill Rd., Suite 300
Chesterfield, MO 63017
e-mail: sfrey@ange1ica.com
Fax: 314-854-3949

and to

Attorneys for Angelica:

Christopher Graver
Stinson Morrison Hecker LLP
1850 North Central, Suite 2100
Phoenix, AZ 85251
Email: cgraver@stinson.com
Fax: 602-240-6925

or to such other place and with such other copies as either party may designate as to itself by written notice to the others.

9.5    **Entire Agreement; Amendments and Waivers**. This Agreement, and all Exhibits and Schedules attached or to be attached hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No amendment to or waiver of this Agreement shall be binding unless executed in writing by or on behalf of the party to be bound thereby. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

9.6    **Construction**. The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. Unless stated to the contrary, all references to Articles, Sections paragraphs or clauses herein shall be to the specified Article, Section, paragraph or clause of this Agreement, and all references to Exhibits and Schedules shall be

10

to the specified Exhibits and Schedules attached hereto. All Exhibits and Schedules attached are made a part hereof. All terms defined herein shall have the same meaning in the Exhibits and Schedules, except as otherwise provided therein. All references in this Agreement to "this Agreement" shall be deemed to include the Exhibits and Schedules attached hereto. The terms "hereby", "hereto", "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used. Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees. The term "including" when used herein shall mean "including, without limitation." Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

9.7    **Third Party Beneficiaries**. No Person other than the parties hereto and parties to the Exhibits, shall have any rights or claims under this Agreement. Parties to the Exhibits hereto shall be third party beneficiaries of this Agreement.

9.8    **Multiple Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.9    **Invalidity**. In the event that any one or more of the provisions, or any portion thereof, contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

9.10    **Further Assurances**. Without limiting any other rights or obligations of the parties contained in this Agreement, following the Closing, Seller agrees to execute such documents, instruments or conveyances and take such actions as may be reasonably requested by Buyer's counsel and otherwise reasonably cooperate with Buyer, its Affiliates and their respective Representatives in connection with any action that may be necessary or advisable to put Buyer in possession of the Assets.

9.11    **Cumulative Remedies**. All rights and remedies of either party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies.

9.12    **Termination of Covenants, Representations, and Warranties**. The representations, and warranties made by Seller and/or Buyer herein shall not

11

terminate as of the Closing. Buyer shall have the right to seek indemnification subsequent to the Closing based on a breach of a representation and/or warranty or any covenant made by Seller herein or in any other document, certificate or instrument entered into by Seller in connection herewith.

       9.13   **Bidding Procedure**. In the event that other interested bidders attend the 363 sale hearing for the Assets, bidding increments shall not be less than $50,000. In the event that another bidder makes a higher bid than Buyer at the 363 sale hearing and such offer is determined by the Bankruptcy Court to be the highest and best offer, then, subject to Bankruptcy Court approval, up to $25,000 of such additional bid amount shall be paid to Buyer as reimbursement for its actual costs and expenses in performing due diligence and preparing and entering into this Asset Purchase Agreement.

[The next page is the execution page]

12

**IN WITNESS WHEREOF**, the parties hereto have caused this Asset Purchase Agreement to be executed by their respective duly authorized officer or manager as of the day and year first above written.

> **SELLER:**
> **Richard Schwalbe, Chapter 7 Trustee of the**
> **Bankruptcy Estate of Lohrey Enterprises, Inc.,**
> **dba West Coast Linen**
>
>
> By: _____
>     Richard Schwalbe
>
>
> **BUYER:**
>
> **Angelica Textile Services, Inc.**
>
>
> By: _____
>     John S. Olbrych
>     Chief Administrative Officer

13

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

**LOHREY**
**Equipment list**
**Exhibit A**

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 001 | Milnor model 6458TG1R dryer, s/n AAF/0301272001, (2004), 300 lb. capacity, front loading, rear discharge | |
| 002 | Milnor model 6458TG1R dryer, s/n AAG/0301434201(2004), 300 lb. capacity, front loading, rear discharge | |
| 003 | Milnor model 6458TG1R dryer, s/n AAG/0301434101, (2004), 300 lb. capacity, front loading, rear discharge | |
| 006 | Jensen folder, Silverline Plus, s/n 551317, 130" W, with Jensen CT1081 computer controls | A |
| 007 | Jensen folder, Silverline Plus, s/n 551316, 130" W, with Jensen CT1081 computer controls | |
| 008 | Jensen folder, Silverline Plus, s/n 551297, 130" W, with Jensen CT1081 computer controls | |
| 009 | Jensen folder, Silverline Plus, s/n 551289, 130" W, with Jensen CT1081 computer controls | |
| 010 | Jensen folder, Silverline Plus, s/n 551279, 130" W, with Jensen CT1081 computer controls | |
| 011 | Jensen folder, Silverline Plus, s/n 551280 (new 2003 - 2006), 130" W, with Jensen CT1081 computer controls | |
| 012 | Milnor model MP1603R hydraulic press type extractor, s/n AAJ/0401765801 130 lb. capacity (new 2004) | |
| 013 | Milnor model MP1603R hydraulic press type extractor, s/n AAJ/0401816401, 130 lb. capacity (new 2004) | |
| 014 | Jensen model Logic 2000 feeder, s/n 102091 (new 2003), 141" W, with CT1092 computer controls | |
| 015 | Jensen model Logic 2000 feeder, s/n 102137 (new 2004), 141" W with CT1092 computer controls | |
| 016 | Jensen model Logic 2000 feeder, s/n 102138 (new 2004), 141" W with CT1092 computer controls | |
| 017 | Jensen model Logic 2000 feeder, s/n 102092 (new 2003), 141" W, with CT1092 computer controls | |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 14 of 24

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 10:33 PM
On 7/22/2009

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 018 | Milnor model 48040F7J washer, s/n AAG/0201101101 (new 2002), 275 lb. capacity, 115 psi | |
| 019 | Approximately (1,000) plastic laundry carts | |
| 020 | Milnor (Energenetics) model MLF3636 lint collector, s/n NOT Visible, with duct work and roof mounted blower | |
| 022 | Milnor model 5805ATG2 dryer, s/n ABH/57933365, 220 lb. capacity, natural gas fired, dryer #1, 110 psi | |
| 023 | Milnor model 30022V6J s/s washer, 60 lb. capacity, s/n AAU0401751201, with E-P Plus controls, Knight-Trak II data mangement systems (2004) | |
| 024 | Milnor model 30022V6J s/s washer, 60 lb. capacity, s/n AAU0401751101, with E-P Plus controls, Knight-Trak II data mangement systems (2004) | |
| 025 | Cissell model 144CD42G dryer, s/n 122-185, 110 lb. capacity | |
| 026 | Cissell model 144CD42G dryer, s/n 2001G45478, 110 lb. capacity | |
| 027 | Cissell model 144CD42G dryer, s/n 2010035375, 110 lb. capacity | |
| 028 | Cissell model 144CD42G dryer, s/n 8616-287, 110 lb. capacity | A |
| 029 | Ty-Tech model EXT-60 package tyer serial number not available | |
| 030 | Ty-Tech model EXT-60 package tyer serial number not available | |
| 031 | Ty-Tech model EXT-60 package tyer serial number not available | |
| 032 | Ty-Tech model EXT-60 package tyer serial number not available | Engineering |
| 033 | Ty-Tech model EXT-60 package tyer serial number not available | Engineering |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 15 of 24

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

printed @ 10:33 PM
On 7/22/2009

LOHREY
Equipment list

## 2008 Machine description

| Reference number | Machine description | Location |
|---|---|---|
| 034 | GSE model 66/665 in ground scale with digital readout, s/n with printer and keypad | outside |
| 035 | Norman model 4511A cart dumper, s/n 9122 | |
| 036 | Assorted belt and roller, Take-A-Way conveyors | |
| 037 | Air Chicago small piece folder, s/n 51884204 | |
| 038 | Auto soil sort system | |
| 041 | **Milnor shuttle system consisting of:** | |
| 042 | 4 - 42" x 9' loading conveyors | |
| 043 | Milnor 3-way conveyor, 76' long | |
| 044 | 6 - Milnor 42" x 15' loading conveyors | |
| 045 | Milnor auto load shuttle, model COSHA113, s/n 5793272, (1991) | |
| 046 | Shuttle control system, s/n 0301420301 | owned by MCI |
| 047 | **1991 Milnor CBW batch washer consisting of Miltron & loading conway** | |
| 048 | 16 - Modules with consecutive s/ns from 5793301 to 5793315 | |
| 049 | Model 76032C2L discharge module, s/n 5793330 | |
| 050 | Reuse tank, s/n 5793340 | |

Case: 09-10007   Doc# 102-1   Filed: 07/23/10   Entered: 07/23/10 20:03:43   Page 16 of 24

**LOHREY**
**Equipment list**

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 051 | Flowlift, s/n 5793342 | |
| 052 | Flowsplit, s/n 5793341 | |
| 053 | **1994 Milnor CBW batch washer consisting of Miltron & loading conway** | |
| 054 | 16 - Modules with consecutive s/ns from 6420602 to 6420615 | |
| 055 | Model 76032C2F discharge model, s/n 6420601 | |
| 056 | Reuse tank, s/n 6420640 | |
| 057 | Flowlift, s/n 6420642 | |
| 058 | Flowsplit, s/n 6420641 | |
| 059 | Milnor model 52038WTN 300 lb. capacity washer, s/n 5793406 (1991), (located outside under tarp and non-operational) | outside |
| 060 | Milnor model 52038WTN 300 lb. capacity washer, s/n 5793405 (1991), (located outside under tarp and non-operational) | outside |
| 061 | Milnor model 52038WTN 300 lb. capacity washer, s/n 6175901 (1993) (located outside under tarp and non-operational) | outside |
| 062 | Milnor model 52038WTN 300 lb. capacity washer, s/n N/A, (located outside under tarp and non-operational) | outside |
| 063 | Colmac model 2000-2R-G/SP steam tunnel, s/n 091791MMC0729 | |
| 064 | (3) Milnor model 58080TG1 300 lb. capacity gas dryers, s/n 6175906 (1993), 6420686 (1994) and 5793430 (1990), (outside under tarp, non-operational) | outside |
| 065 | Milnor model 42026QHP 125 lb. capacity washer, s/n 5793430, (1990) | outside |

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

LOHREY
Equipment list

printed @ 10:33 PM
On 7/22/2009

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 066 | Unimac model UW85PVQV3003 85 lb. capacity washer, s/n M0397098489 | |
| 067 | Pioneer all s/s cart washing booth, 34' long with 60' long track system (recently rebuilt) | |
| 068 | Jensen model 396 3-roll ironer, s/n 10891 (1991) | |
| 069 | Jensen model 396 3-roll ironer, s/n N/A | |
| 070 | Jensen model 396 3-roll ironer, s/n N/A | |
| 071 | Jensen model 386 3-roll ironer, s/n 11127 (1992) | |
| 072 | In ground cart scale with GSE 655 digital readout model 663 sn 087688 | |
| 073 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6553, (non-operational) | A |
| 074 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6552, (non-operational) | A |
| 075 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6551 (non-operational) | A |
| 076 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6550, (non-operational) | A |
| 077 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6549 (non-operational) | A |
| 078 | Norman model 81HS 200 lb. capacity gas dryer, s/n T6519, (non-operational) | A |
| 079 | Milnor 10-module batch washer, (in yard, non-operational) (1992) | outside |
| 080 | Milnor 10-module batch washer, (in yard, non-operational) (1992) | outside |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 18 of 24

**LOHREY**
**Equipment list**

Lohrey finance
• West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 081 | American 8-roll ironer, (non-operational) | A |
| 082 | D' Hooge 3-roll ironer, (non-operational) | A |
| 083 | D' Hooge 4-roll ironer, (non-operational) | A |
| 084 | Troy 8-roll ironer, (non-operational) | A |
| 085 | Troy 8-roll ironer, (non-operational) | A |
| 087 | Sullair model LS-120-50 H/A/KT 50 hp rotary screw air compressor, s/n 003-145334 | |
| 088 | Sullair model SR-250 air dryer, s/n 2501460003 | |
| 089 | Sullair model SR-500 air dryer, s/n 2767380007 | |
| 090 | Sullair model 12B-50H-WCAC-2KT 50 hp rotary screw air compressor, s/n 003-94835 not operational | |
| 092 | Cleaver Brooks model CP200-400 gas fired boiler, s/n L-91222 (1992), 200/400 hp, 150 psi | |
| 093 | McClain model E-11 vertical trash compactor, s/n 11E11982849 | |
| 094 | (3) Stainless steel 8,000 gallon holding tankswith steam bundle anf Kemco pumps | |
| 095 | Pentair 2-tank water softening system | |
| 096 | Ellis water reclaim system with s/s open top sludge tank, 8,000 gallon s/s water tank, filter press, pumps, drum filter, etc. (has not operated for 8 years) | |
| 097 | Jensen type butterfly folder, s/n 37-6234 (2004) | A |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 19 of 24

**LOHREY**
**Equipment list**

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 098 | Jensen type butterfly folder, s/n 37-6227-TP (2004) | |
| 099 | Jensen jet towel/garment folder, s/n 300872 (2003) | |
| 100 | Jensen jet towel/garment folder, s/n 300869 (2003) | |
| 101 | Jensen jet towel/garment folder, s/n 300894 (2003) | |
| 102 | Jensen jet towel/garment folder, s/n 300915 (2003) | |
| 103 | Bunn tying machine, s/n 90274, (2008) | |
| 104 | Bunn tying machine, s/n 90275 (2008) | |
| 105 | Bunn tying machine, s/n 90273 (2008) | |
| 106 | Milnor model 6458TGIL dryer, s/n 0502442401 (2005) | |
| 107 | Milnor model 6458TGIL dryer, s/n 0502442201 (2005) | |
| 108 | Milnor model 6458TGIL dryer, s/n 0502442301 (2005) | |
| 109 | (3) Milnor model 58058TG2 dryers, s/n 5998004 (1992), 6420685 (1994) and 5894387 (1991) | |
| 111 | Jensen model Variant 2000 2-station feeder, s/n 200035, (2004) | |
| 112 | Jensen model Classic high speed combination folder, s/n 760672, (2004) | |
| 113 | (3) Milnor model 58080T01 gas dryers, s/n 6420687 (1994), 5793255 (1991) and 5793256 (1991) | |

**LOHREY**
**Equipment list**

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 114 | Milnor model Dryvac02 auto lint system, s/n 5793214 (1991) | |
| 115 | Milnor model Dryvac02 auto lint system, s/n 5793428 (1991) | |
| 116 | Milnor model 42032F7J washer, s/n 0301413601 | |
| 121 | Jensen model P72-18 18-module continuous batch washer, s/n 2006606/001, (2004) console & loading conveyer | |
| 122 | Jensen model SEP72-HD-SE hydraulic extraction press, s/n 2006606/002, (2004), console | |
| 123 | (6) New lint collectors in trailer model MLF1010 | |
| 124 | Clark model CG25 LPG forklift, s/n 0463-9393FB, solid tires, triple mast | |
| 125 | Genie model GS-3246 4' x 8' scissor lift | |
| 126 | (4) 1995 Milnor 165 lb. capacity washers  (Fairmont Hotel equipment) | |
| 127 | Cissell 110 lb. capacity dryer  (Fairmont Hotel equipment) | |
| 128 | 2003 Washex 150 lb. capacity dryer  (Fairmont Hotel equipment) | |
| 129 | Super Sylon 8-roll ironer Central folder with inlet table (Fairmont Hotel equipment) | |
| 130 | Central folder model Silverline # 550568195 | |
| 131 | 2003 Chevrolet Express G3500 van, (did not inspect) VIN: 1GAHG39U331230368, Lic 5BUC940 | |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 21 of 24

* Lohrey finance
* West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 132 | Isuzu Bobtail truck | |
| 133 | 2002 Isuzu Bobtail truck, | |
| 134 | 1995 Wabash 53' dry van trailer, VIN: IJV532U8SL319020, Lic 1VU5487 | |
| 135 | 1995 Wabash 53' dry van trailer, VIN: IJV532U9SL319026, Lic 1VU5488 | |
| 136 | 1997 Great Dane 53' dry van trialer, VIN: 1GRAA9628VBO32307, Lic 4FF3776 | |
| 137 | Fruehauf short bed trailer | |
| 138 | 1998 Great Dane 53' dry van trailer, VIN: 1GRAAO629WB131747, Lic C9317V | |
| 139 | **Two axle trailer** | |
| 140 | Milnor shuttle(2005) sn 0502337101 with console & track | |
| 141 | Troy sheet spreader | |
| 142 | seagaw sheet spreader | |
| 143 | Air Chicago XL, s/n 51419 | |
| 144 | Air Chicago XL, s/n 51418 | |
| 145 | Air Chicago XL, s/n 51420 | |
| 146 | Air Chicago XL, s/n 51417 | |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 22 of 24

° Lohrey finance
ᵇ West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

**LOHREY**
**Equipment list**

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 147 | Chicago S-13-BB, s/n 56570 with stacker | |
| 148 | Lawson Product Bolt B. with hardware | |
| 149 | (2) 12ft rolling ladders | |
| 150 | (20) six shelf rolling wire shelving | |
| 151 | 4' X 8' light table on wheels | |
| 152 | (2) 4' X 8' light table no wheels | |
| 153 | 2' X 4' light table on wheels | |
| 154 | 30" X 80" folding table | |
| 155 | (2) 48" X 16" Lite tables | |
| 156 | GSE model 350 floor scale | |
| 157 | 3 sets of flow racks with trays | |
| 158 | Jensen Model 396 three-roll ironer | |
| 159 | Semi-electric stackersn 02238 | warehouse |
| 160 | (24) 8' X 4' Sections pallet racks | warehouse |
| 161 | (2) 8' X 2' Sections pallet racks | warehouse |

Case: 09-10007    Doc# 102-1    Filed: 07/23/10    Entered: 07/23/10 20:03:43    Page 23 of 24

Lohrey finance
West Coast Linen EQUIPLIST UPDATED July 1 2009.xls

**LOHREY**
**Equipment list**

| Reference number | 2008 Machine description | Location |
|---|---|---|
| 161 | (3) 8' X 2' pallet racks | warehouse |
| 161 | (3) 8' X 4' pallet racks | warehouse |
| 161 | D. H. tank with feed pump | |
| 164 | Various office furniture | |